CARLISLE *v.* HOLTON et al.

Damages cannot be recovered by the owner of a steamer for injuries sustained by a collision with another boat, though the latter was greatly in fault, where the collision might have been avoided by ordinary care on the part of those in charge of plaintiff's boat.

Where a collision takes place between steamers engaged in racing, the owners of neither boat will be allowed to recover damages for any injury sustained, however gross the fault of those in charge of the other boat.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Randall*, for the plaintiff, cited C. C. 2294. C. P. 1. Abbott on Shipping, p. 238. Story on Bailments, § 611. *Lowry* v. *Steamer Portland*, 1 Law Reporter, 313. *Bartlette*, for the appellants, cited C. C. 2299. *Myers* v. *Perry*, 1 An. R. 372. 8 Mart. N. S. 504. 8 La. 539. The judgment of the court was pronounced by

SLIDELL, J. This is an action brought by the plaintiff, charterer of the steamer Edna, against the master, pilot and owners of the steamer Westwood, to recover the amount of damages arising from a collision. The plaintiff alleges that the officers and crew of the Edna did every thing in their power to avoid a collision, and were not guilty of any fault; and that the collision and loss were caused by the negligence and unskilfulness of those in charge of the Westwood. The court gave the plaintiff judgment for $326 50, and the defendants have appealed.

It appears that these steamers were making a trip from Biloxi to New Orleans, each having a considerable number of passengers. The Edna left Biloxi a short time before the Westwood, and as they approached the entrance of Pass Christian, the latter attempted to pass the former, coming close alongside on the starboard or shore side—so close that the vessels were almost touching. A witness, who was a passenger, declared that he could have shaken hands with a person on the other boat. They ran in this position for about an hour, the passengers conversing together on the chances of a collision, and the women and children being in a state of alarm. At length the bell of the Westwood rang, and her engine stopped. She fell nearly astern; but before the two vessels were quite clear the engine was again in motion, and the former position was resumed. The collision took place shortly after, by the Westwood striking her bows against the Edna on the after part of the wheel house, her engine having been again stopped a few seconds, but too late to avoid mischief. The wheel-house and wheel of the Edna were broken; unable to proceed, she drifted towards the shore, and anchored or touched the bottom. The Westwood proceeded on her voyage, offering no assistance. At the entrance, Pass Christian is a mile in width, and the two boats were at the time of the collision in sight of the wharf at Pass Christian, distant about half a mile. The immediate cause of the collision was considered by the district judge as left in doubt. The witnesses on one side deposed that the Westwood sheered into the Edna, while the witnesses on the other side as positively swore that it was the Edna which sheered into the Westwood. The district judge expressed his decided censure and condemnation of both masters; declaring himself satisfied "that the motive with the captains was to reach the wharf first to catch the passengers, for which purpose they recklessly pressed their boats regard-

less of consequences." He gave, however, apparently with serious reluctance, a judgment in favor of the plaintiff. He was of opinion that an attempt to pass ought not to be made in a narrow channel; that, if passing was justifiable, it should have been attempted, not by running inside of the Edna, but by giving her a sufficient birth and running to seaward, where it was shown the Pass was a mile wide, with plenty of water. "If," said the judge, "she chose to run between the Edna and the land in the inner side of the channel for the purpose of first reaching the wharf, she risked the collision which has taken place, and must bear the consequences."

We entirely concur with the district judge in the view he has taken of the facts of this case, but are unable to assent to the legal conclusion deduced from them. It may be conceded that the captain of the Westwood committed a gross fault in running his steamer inside of the Edna; and yet it by no means follows that the plaintiff should be maintained in his action. The question still remains, could the plaintiff, with ordinary care, have avoided the collision? Was there a proper prudence exhibited, under the circumstances? Such a prudence as must be exacted from every man, and especially from those to whom the lives and property of others are entrusted? The district judge has properly characterised the conduct of both masters as censurable and reckless. The spectators of this scene had been expecting a collision for some time previously, and its danger, instead of decreasing, was becoming more imminent. When the captain of the Edna saw that the rival boat was pertinaciously violating the usage and pressing for the inner side of the channel, he had no right obstinately to persevere in his course because the other party was in fault. He should have abandoned his course and yeilded his right, in order to secure the safety of his vessel and passengers. There is not the slightest reason to suppose that the collision might not have been avoided, if the officers of the Edna had chosen to desist from the race in which, as said by the district judge, both parties "recklessly pressed their boats regardless of consequences."

We held in *Meyers* v. *Perry*, 1 Ann. Rep. p. 374, that a party cannot be heard as plaintiff who has contributed to the collision by his own negligence or improper management; and, after a careful re-examination of the authorities, we find no reason to depart from the doctrine.

In *Butterfield* v. *Forrester*, 11 East, 60, the rule was very forcibly stated by Lord Ellenborough. The defendant had put an obstruction in the road, over which the plaintiff fell. But it appeared that he was riding with great violence and want of ordinary care, otherwise he might have avoided the obstruction. It was then said, a party is not to cast himself upon an obstruction which has been made by the fault of another and avail himself of it, if he do not himself use common and ordinary caution to be in the right. In cases of persons riding upon what is considered the wrong side of the road, that would not authorise another purposely to ride up against them. One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action—an obstruction on the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff.

In *Handyside* v. *Wilson* it was urged by counsel that, there was no law of the sea or the road, by which a person is justified in adhering to a particular course where it will be productive of mischief; and the court sustained that view. 3 Carrington & Payne, 528.

In *Vanderplank* v. *Miller*, 1 Moody and Malkin 171, it was proved that the

CARLISLE
v.
HOLTON-

defendant's vessel, if carefully navigated, might have avoided the plaintiff's vessel, which was lying at anchor in the Thames. But there was also evidence that the whole of the crew of the plaintiff's vessel were below at the time of the accident, and that if any of them had been on deck, they might, by a slight shifting of her position as she lay at anchor, have avoided the shock, and the accident would not have happened. Lord Tenterden told the jury that if they thought there was want of care on both sides, the action could not be maintained.

So in *Luxford* v. *Large*; 5 Carr. & Payne, 437, Lord Denman told the jury that, to find for the plaintiff they must be satisfied that the plaintiff was not in fault, and did not contribute to his misfortune by his improper management of the boat.

The same doctrine has been repeatedly recognised in various States of this Union, and in this State. In *Fleytas* v. *Ponchartrain Railroad Co.* 18 La. 339, the plaintiff's action was for the value of a slave killed by the steam-car's running over him. It was proved that the slave was lying upon the railroad, either asleep or drunk. It was also not improbable, under the evidence, that the cars could have been stopped before reaching the negro, by timely effort. But the court gave judgment for the defendants, saying that if the slave fell asleep on the road he was guilty of great neglect, and if he was disabled from taking care of himself by intoxication his owner could not expect compensation for him. So also in *Lesseps* v. *Ponchartrain Railroad Co.* where the evidence was that a slave, mules, and cart were run over and destroyed, through the fault and folly of the slave in driving across the railroad when the cars were approaching and near, it was held that the owner could not recover, although it was considered that the defendants had acted indiscreetly, in running their cars rapidly in a crowded street.

We are therefore clearly of the opinion that the persistance of the plaintiff's officers and crew in maintaining a hazardous position under the circumstances stated, is not excused by the gross fault of the other steamer. Their own obstinacy and imprudence must be considered as having contributed to a collision, which with ordinary care they might have avoided. The practice of racing, which has become so common on our waters, is, in our opinion, highly dangerous and reprehensible ; and when a collision takes place between boats thus engaged, they must not expect any relief at our hands.

It is therefore decreed that the judgment of the court below be reversed, and that their be judgment for the defendants, with costs in both courts.