No. 6447.

Mrs. EMMA F. WEEKS, WIDOW OF ROBERT H. WEEKS, DECEASED, *vs.* NEW - ORLEANS & CARROLLTON R. R. Co.

Contributory negligence caused by the inebriation of the party injured, will exonerate the party inflicting the injury, from responsibility, if there is no fault on his part.

The fact that the party causing the injury, under such circumstances, has paid the doctor's bill of the party injured, is an act of praiseworthy charity, and not an acknowledgment of responsibility and estoppel from denying it in a suit for damages.

APPEAL from the Superior District Court, parish of Orleans, *Lynch*. J.

Cotton & Levy and Henry P. Dart for Plaintiff and Appellee :

Although plaintiff's misconduct may have contributed remotely to the injury, if the defendant's misconduct was the immediate cause of it, and with the exercise of prudence he might have prevented it, he is not excused. Redfield on Railways, vol. 2. sec. 177 ; 10 An. 33 ; 17 An. 19 ; 23 An. 182.

The doctrine of contributory negligence does not apply to this case.

Defendants have acknowledged their liability by paying the doctors' bills, and are estopped from denying it.

The verdict of the jury, *not being excessive*, should not be disturbed. C. C. 1934, sec. 3 ; 20 An. 27 ; 18 An. 26 ; 17 An. 20.

L. E. Simonds for Defendants and Appellants :

The evidence shows clearly that there was no fault on the part of Defendants, but, on the contrary, that the accident was caused by the fault of the deceased alone. It is, therefore, a case of contributory

negligence on the part of the injured party, and he cannot recover damages. 2 Redf. on Law of Railways, p. 262, taken from 11 Tr. Common Law Rep. 377. 11 An. 292; 23 An. 462; 27 An. 56; 27 An. 53; 3 An. 48; 6 An. 496; 30 An. 20.

The opinion of the Court was delivered by

LEVY, J. The plaintiff sued the defendant to recover damages to the amount of fifty thousand dollars, on account of injuries alleged to have been received by her husband, in being run over by the car belonging to the railroad company (defendant), which injuries, she alleges, resulted in the death of said husband. The case was tried by a jury, and there was a verdict and judgment in favor of the plaintiff for five thousand five hundred dollars, with legal interest from judicial demand and for costs of suit, from which judgment this appeal is taken.

The evidence on trial discloses the following facts : The deceased, Robert H. Weeks, on the evening of the 8th of May, 1875, between the hours of seven and half-past seven o'clock, had been a passenger, in car No. 9 of the N. O. and Carrollton Railroad Company, having gotten on the car at the stand on Jackson near Tchoupitoulas street. When he reached his destination, the car was stopped, near the crossing of Constance street on Jackson, and after getting out he afterward fell across the track. Car No. 14, driven by Johnson, an employee of the Railroad Company, was coming behind No. 9, going in the same direction, and when No. 9 stopped was about a block behind it. It appears that the driver Johnson discovered the deceased on the track about the time he reached Constance street, the deceased being on all fours and endeavoring to rise, or in a stooping position making efforts to get up ; the driver hallooed " Get off the track," and about the same time put on the brake ; the movement of the car was checked and almost stopped, when the horse struck the man and he was thrown under the wheels, which passed over the man and rested on him. Several persons who were near the spot rushed to the car and succeeded in rolling the car off the body, when the horse becoming unmanageable jerked the car forward and the wheels again passed over the body. The persons who were rendering assistance then unhitched the horse, extricated the man, who was carried to a neighboring drug-store, where a physician was sent for, who discovered that one leg and an arm had been fractured and crushed. Shortly thereafter the man was taken to his home. On the next morning the leg was amputated, and on the 13th of May, 1875, five days after the accident, the man died. At the drug-store, he recovered consciousness for a while, and was also conscious while he was being carried from the drug-store to his residence, and during the time between the accident

and the day of his death spoke intelligibly to one of his physicians, and complained of pain and suffering.

The grounds upon which plaintiff seeks to recover are specially set forth in the petition as follows : 1st. That the company is liable for injuries done to persons through defective machinery or cars used in carrying passengers. 2nd. That, in this case the "brake" on car No. 14 was not secure and firm as on other cars used by other companies. 3d. That the driver had not skill, strength, experience, and capacity to manage and run the car. 4th. That the horse was not a gentle and safe animal for the work in which he was employed, and this was known to the company, its officers, and employees. 5th. That the employee was running the horse and car at a rapid rate of speed, in violation of the charter and by-laws of the company and the ordinances of the city of New Orleans, limiting the speed. 6th. That at the time and hour of the occurrence the company has been in the habit of running their cars from the foot of Jackson street to their depot at a rapid speed of from ten to fifteen miles an hour, with the knowledge and sanction of the officers and employees of the company, and running at such speed before coming in collision with the body of deceased, by reason of such recklessness and disregard of life and limb and gross neglect, her husband was killed.

Plaintiff relies upon Art. 2315, C. C., for the right to institute the suit ; the right of action which her deceased husband had having survived solely to her, as widow of the deceased, who left no minor children.

This article only subrogates the plaintiff to the right of action which the deceased, himself, had, and could only recover the damages suffered by deceased himself. Earhart vs. N. O. & C. R. R. Co., 17 An. 243.

To entitle one to recover in a case like this, where it is claimed that the injury and consequent damages are caused by negligence, he must bring it within the operation and intent of the law, and it seems to be a well-settled principle that, "negligence, whereby injury results to a party, generally belongs to that class of wrongs denominated torts ; and the general rule is, that for all injuries to a person, resulting from the negligence of another, and to which the party injured has not, by his own act, or negligence materially contributed, the party injured may recover all such damages as directly and naturally flow from the negligence ;" but "if the party injured contributed to produce the result, he is in pari delicto, and cannot recover damages." Such is a brief statement of the general principles of law in such cases. Field on Damages, 517. 11 An. 292 ; 27 An. 53 ; 30 An. 20. Redfield on Railways, 117. 23 An. 464 ; 3 An. 48.

A careful perusal of the evidence and consideration of all the facts proven on the trial of this case lead us to the conclusion that there was no defect in the machinery of the car No. 14 which in any manner contributed to the fatal accident which befell the deceased Weeks. The testimony of Ahern shows that it was "in perfect order, as good as new." It is also proven that the driver Johnson was not wanting in skill, strength, experience, and capacity to manage the car. On the contrary, he is shown to have been engaged in driving an express wagon for ten years and performing the duties of receiving and delivering packages, and for more than a year previous to the accident in driving street cars ; his lameness did not interfere with his efficiency as a driver. It is also proven that the horse drawing the car was a "gentle and safe animal." The witness Ahern, who was in charge of the car-station of the railroad company testifies that the horse had been under his charge for nearly two years ; he was a perfectly gentle horse ; witness had "employed him in every conceivable manner ; he had no bad habits." George Jenkins, in charge of the company's stables, testifies to same effect. The horse manifested no wildness, and did not become unmanageable until he came suddenly upon the deceased or in contact or collision with him, and afterward when the body was under the wheels and the persons were endeavoring to roll the car back. It is not deducible from the evidence that the accident was attributable to wildness of the horse. When rehitched to the car, after the body had been removed and he was out of the crowd, he proceeded on his route in his accustomed quiet manner. As to the rate of speed at which the car was moving, the witnesses do not fully agree. We gather, however, that the cars on Jackson street were in the habit of going faster than on some of the other streets. The rate of speed of the cars of this company is limited by city ordinance to six miles per hour. We think that there was no unusual speed of the car at the time of the unfortunate occurrence, and the weight of testimony is to the effect that it was moving at the ordinary rate, and we fail to see that the accident was attributable to any unusual speed.

Mr. Lewis testifies that in his opinion the rate of speed was about seven miles. Mr. Jeter thinks about eight or nine miles ; Mr. Brutnell about eight or nine miles ; thinks it was going at the speed they usually drive, and that the cars were about 300 feet apart. Mr. Swan says that the car was going at common speed. Mrs. Baldwin says : "The car was going at a very moderate gait ; it was not going at an unusual gait."

Mr. Hebert testifies that he saw a dark figure or object in the street, which he thought was either a man or boy, and about the same time saw a car approaching from the direction of the river ; that the man was not then on the track ; that the object stepped on the track and

seemed to him to be stooping as though applying his ear to the rail; that the car got nearly within twenty feet, when the driver hallooed three times to the man to get out of the track, and the driver put on the brake and stopped the car almost still, and would have stopped it, had not the horse, who saw the object on the track, backed aside and toward the car and afterward jumped over the man and pulled the car on him. Mr. Hebert also states that the horse was going at an ordinary trot; that when he saw Weeks he was off the crossing and near the track. The evidence satisfies us that the deceased did not use that proper care and prudence, the exercise of which would have prevented the accident. It matters not that he may have been under the influence of liquor; that would afford no excuse for his own negligence, and if negligence, neglect, or recklessness had been shown on the part of the employees or officers of the company, without contributing negligence on the part of Weeks, the fact of his drunken or sober state should neither have mitigated nor aggravated their offense; and if while in a state of intoxication or under the influence of liquor his own acts of negligence and imprudence tended to bring about the disastrous injury of which complaint is made, no greater care could be required of the company, its employees and agents, than it would be bound to take as to one perfectly sober. In this case, however, the knowledge of the inebriated condition of Weeks is not brought home to the driver, and we think he used all the care, diligence, and exertions in his power to prevent an accident which would not have occurred if the deceased had not blunted his faculties by the excessive indulgence in drink on that evening; and the evidence shows that while the deceased was not unable to walk, he was considerably under the influence of liquor, having during the whole afternoon indulged very freely in the use of ardent spirits. On his first recovery of consciousness, at the drug-store, when a suggestion was made in regard to the arrest of the driver, Weeks, the deceased, said "I am to blame; don't arrest him;" thus exculpating him in the matter.

The plaintiff contends that the corporation, defendant, is estopped from denying its liability for this death, after confessing a partial liability by paying the doctor's bills. We cannot take this view of the company's action, and are of the opinion that the doctrine of estoppel cannot be applied, as insisted by the plaintiff. The employment of physicians and surgeons to attend on the injuries sustained by Mr. Weeks, and payment for their services, was an act of humanity most praiseworthy and creditable to the officers of the company, and the evidence discloses that this is generally done in instances where accidents occur and injuries are sustained on its road. The generous exercise of charity and prompt relief extended to the suffering, without solicitation,

can hardly be construed into an assumption of liability and acknowledgment of wrong in this case.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be annulled, avoided, and reversed, the verdict of the jury set aside, and plaintiff's demand rejected at her costs in both courts.

Rehearing refused.