## No. 6676.

### GABRIEL CHILDS VS. NEW ORLEANS CITY RAILROAD COMPANY.

Case of contributory negligence on the part of the injured party. Re-affirmance of the principle, that the party inflicting the injury is not liable in damages, in such cases, even. if he is also at fault.

APPEAL from the Sixth District Court, parish of Orleans.   *Rightor,.* J.

---

*Breaux & Hall* for Plaintiff and Appellee.

First—The streets are the common property of all citizens and their use by railway companies must be such as not to unnecessarily endanger those who are exercising only a legal right in using them.   Barksdul vs. N. O. & C. R. R. Co., 23 A. 182; Shea vs. 6th Av. R. R Co., 62 N. Y. 180; Shea vs. Protero R. R. Co., 44 Cal. 414; 6th Av. R. R. Co. vs. Ker, 45 Barbour, 140; Redfield on Railways, Ed. 1867, pp. 318, 319.

Second—Acts in a legal sense neither imprudent nor negligent, will not prevent a party from recovering damages from a defendant at fault; and the exercise of a legal right is not imprudent or negligent.   Knight vs. Pontchartrain R. R. Co., 23 A. 464; Choppin vs. C. R. R. Co., 17 An. 19.

*Carleton Hunt* for Defendants and Appellants.

When in a suit to recover damages for personal injuries it is proved that the plaintiff was negligent, and contributed by his carelessness to the disaster, he cannot recover, even though the defendant be in fault.

The evidence shows that the plaintiff in this case was guilty of contributory negligence.

The opinion of the Court was delivered by

POCHÉ, J.   Plaintiff sues the City Railroad Company for ten thousand dollars as damages alleged to have been caused him by the negligence· or carelessness of one of its drivers in running his car over plaintiff, whose leg was thereby crushed and damaged so as to necessitate an amputation of the limb, and thus disabling him from pursuing his usual. trade or occupation of white-washer and plasterer.

The accident occurred on Esplanade street, in this city, on the 2d' of October, 1875, at about six o'clock in the evening.

The defense is a general denial, and the plea that plaintiff, by his· own negligence and carelessness, contributed to the disaster.

The judgment of the lower court, predicated on the verdict of a. jury, allowed five hundred dollars to plaintiff, and defendant appeals. Plaintiff, joining in the appeal, prays that the judgment be amended so as to allow him the full amount of damages which he prayed for in his· petition.

Defendant calls our attention to three bills of exceptions which he· has reserved from the refusal of the District Judge to give to the jury three separate special charges which were asked by the defendant, and which, together, contain in substance the following principles : That· plaintiff cannot recover if at the time of the accident he was walking in· the narrow space between the double track of defendant's road; and that notwitstanding the warning given him by the driver of one of defendant's cars· then going in the opposite direction, he continued to· walk on one, or between the two tracks, when he could have taken either one of two dirt or wagon roads on either side of said double track; that under such circumstances plaintiff, having by his negligence· contributed to the disaster, he cannot recover, even though defendant be in fault.

The solution of the question presented in these bills involves an ex-· amination of the law and of the jurisprudence bearing on such cases. But these principles have been of such frequent application in our own,. as well as in the Federal Courts, the question can no longer be considered as doubtful.

In a recent case decided by us, (Weeks vs. The New Orleans and· Carrollton Railroad Company, 32 A. 615), we had occasion to examine· into the very principle involved in this case, and to thoroughly review and compare all the authorities which could throw any light on the· subject, and after such examination we concluded to recognize and reaffirm the doctrine laid down by our immediate predecessors in the· case of Schwartz vs. City Railroad Company, 30 An. 15.

And we consider as now well settled in our jurisprudence, that in such cases the party injured cannot recover, if he contributed to pro—

duce the result, or in other words, if both parties are in fault, neither can recover damages from the other. 18 L. 339; 3 An. 48, 441; 6 An. 496; 11 An. 292; 23 An. 462; 27 An. 53; 5 Otto, 700.

The instructions which the defendant urged upon the judge being consonant with the principles enunciated in the rule thus established, we think that the judge erred in refusing to give them to the jury, who might have returned a different verdict if properly instructed.

Having laid down the rule of law which should govern this case, we must now apply it to the facts of the case, as disclosed by the record.

The testimony is unavoidably conflicting on many points, and unsatisfactory on a most material point. Not a single witness saw the collision between plaintiff and the car which crushed him. At or near the point where plaintiff was injured, two cars of the same company met, one of them, No. 76, going from Canal street to the Bayou St. John bridge or depot, and the other, No. 93, from the depot to Canal street. And it is singular that no witness declares absolutely which of the two cars struck the injured man.

Plaintiff himself does not know which, if any, car struck him, and seems to have very little, if any, recollection of the circumstances surrounding his painful accident. In one part of his testimony he says he was walking towards the city, with his face turned that way; that the car or object which struck him was behind him, and yet he says that he was stricken and hurt on the front or forepart of the face. On this, and on several other points, his testimony is so conflicting and unsatisfactory that we are disposed to give but little weight to any of his statements.

But after eliminating from the evidence many trivial and unimportant facts or circumstances, and after carefully comparing and weighing together the many statements made by some witnesses and contradicted by others, we glean from the record the following statement of facts, in substance: On the 2d of October, 1875, at about 6 o'clock in the evening, just as the light of day was giving way to the darkness of night (the lamps burning in the cars), Gabriel Childs, who had been out hunting on Bayou St. John, was returning home in the city, with his gun on his shoulder, and followed by his dog, which he led by having him fastened to a string or rope. When he had reached a point on Esplanade street, near its intersection with the Dumaine street railroad, and in front of the Fair Grounds, he was walking on the narrow space, three feet wide, between the two tracts of the City Railroad, on which were then and there running two of its cars, No. 76 on one track, going towards the bayou or depot, and No. 93 on the other (or western) track and going from the depot or bayou. When car No 76 was approaching Childs and was within some twenty feet of him, the driver of that car warned him in a loud voice to get out of the way. The warning was not to get out of

Childs vs. New Orleans City Railroad Company.

the way of that car, but out of the way of car No. 93, which was approaching him from another direction, and in his rear.

Either misunderstanding, or not heeding, the warning thus given and intended, Childs did not get out of the way, that is, did not move away from the narrow space, but rather receded from the track occupied by car 76, and in thus doing, approached too near to the track on which ran car 93, and in thus moving, embarrassed by both his gun and his dog, he came in collision with this car 93, from which he received the injuries which resulted in the amputation of his leg.

He charges that car 93 was being driven at a very brisk or dangerous speed.   This is not supported by the evidence which shows that the car was stopped within eight feet of the spot where he was found wounded, which would have been impossible if the car had been running fast.   As he was not on the track occupied by car 93, but in the narrow space between the two tracks, the driver of that car was not bound to warn him off, and cannot be blamed for running over him if plaintiff moved towards his track just at the moment that the car reached him.

It is true, as contended for by plaintiff, that he has the right in common with all other citizens, to use the public streets of the city, and that the city railroad companies, under their charters, have not acquired the ownership or exclusive use of the ground or of that part of the streets on which their tracks are laid.

But it is equally true that the public, acting through the city authorities, have agreed to give to these roads the use of certain streets for the purpose of laying their rails and of running thereon their numerous cars, from the rapidity and safety of which, as common carriers, the convenience of the public is so greatly enhanced, that all citizens have cheerfully agreed to allow to these railroad companies the paramount right of way over these streets, such as the public convenience requires.

Hence, it is that all foot travelers and vehicles move out of the way of the city cars, and that the public service and public necessity will not allow the free and unobstructed passage of these cars to be in any way impeded.

Now, at that point, the street is very wide, and besides the ground occupied by the double track of the railroad company, and by the intervening space, there is on each side a wagon road fully fifteen feet wide, on which pedestrians can easily walk and keep away from the danger of being run over on the railroad track.   If the inconvenience of walking on a dirt road, occasionally muddy, induces people to prefer walking on the plank road of the car company, they must do so at their peril, and must be understood as preferring to run the chances of

danger than to incur the inconveniences of mud and inferior roads. And the plaintiff who took these chances.should have been on his guard against the approaches of cars which are running there, at that time of day, every two or three minutes. Ordinary prudence teaches that a man walking on either of these tracks should direct his attention to the movement of the numerous cars which incessantly run back and forth, and cross each other so frequently.

That portion of the city is thinly settled, fewer vehicles run on that street than in the centre of the city, and make less rumbling noise than on streets which are paved, and these circumstances facilitate the people who are walking on the track in hearing the approaching car with its jingling bell. And these increased facilities to warn the foot traveler of the approaching danger, all combine to aggravate the negligence and carelessness of the plaintiff in not heeding the voice of warning which came to him from the driver of the outgoing car, and contribute to saddle on his imprudence the greater responsibility for the disaster which occurred and caused him suffering and lasting disability. Applying these facts to the rules of law governing such cases, it is logical to conclude that plaintiff's contributory negligence being the leading cause of the accident from which he has so painfully suffered, and which has destroyed his usefulness to himself and to his family, must defeat his right to recover anything from the defendant, even though its driver may have been in fault in not averting the collision and the consequent disaster.

To reach a different conclusion would be to rule that a foot traveler walking on the track of a city railroad can use his own discretion, and take his own time in giving way to a passing car, and to empower him thus to inconvenience, and delay the passengers on the common carrier, and virtually to defeat the very end proposed by the law in authorizing such corporations for the safe and speedy transportation, for business or pleasure, of the innumerable persons who use this mode of conveyance in all the large cities of this continent.

Notwithstanding our reluctance to disturb the verdict of a jury in such cases, we are compelled to disagree with them in their conclusions in this case.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed, and that the verdict of the jury be set aside. And it is further ordered that plaintiff's demand be rejected, and his suit dismissed at his costs in both courts.

Justice FENNER, having been of counsel in this case, recuses himself.

Rehearing refused.