The opinion of the court was delivered by
Nioholls, C. J.
The defendant appeals from a judgment against it for four thousand dollars, based upon the verdict of a jury, as damages, for personal injuries received by plaintiff by being struck by defendants’ south-bound passenger train, near Baton Rouge, and in being thereby knocked off the railroad trestle or bridge spanning Bayou Gracie.
Plaintiff alleged, in his petition, that on the 15th September, 1898, while passing across the railroad bridge built over a bayou or stream, which forms the northern boundary limit of the City of Baton Rouge, he was struck and thrown from said bridge or trestle to the earth below, a distance of twenty-five (25)' feet, by a passenger train belonging to and operated by the defendant company, known as passenger train No. 5.
That said trestle or bridge was and had been generally used by the public, on foot and on horseback, as a road or passage way in crossing said bayou; that said defendant company had floored the same, and filled the spaces between the railroad ties with sand or gravel, making a safe, convenient and commodious passage across said bayou; and the defendant company had never, in any manner, objected thereto, or prohibited the use of the same by the public.
That the track of the defendant railway company, north of the said trestle, was perfectly straight for one mile or more, and that there was nothing to obstruct the view of an engineer on one of its trains, for at least that distance.
That on the day aforesaid, the defendant’s train, known as No. 5, was due, by schedule, at the station in the City of Baton Rouge at the hour of 9 A.' M., and that at the time petitioner entered upon the track of the defendant company, to walk towards the City of Baton Rouge, it was at least 9:30 o’clock, and he was under the impression that train No. 5 had passed down on time.
That he entered upon said track at a point about 825 feet from the trestle aforesaid, and that at that time no train was in sight; that he walked at his ordinary and usual gait towards the aforesaid trestle, and when about midway the same, he discovered, from the vibration of the rails, that a train was approaching. On looking back he saw that the train was then very near the trestle aforesaid, whereupon he ran as fast *1896 as he could in the effort to get off the trestle before the train reached him. Finding that the approach of the train was so rapid that he could not reach the far 'end of the trestle in time, he attempted to protect himself by getting as far to one side of the trestle as possible, but that the train, in passing', struck him, knocked him from the trestle, a distance of twenty-five (25) feet, inflicting serious and permanent injuries; that he was rendered insensible by the blow and fall, his right shoulder broken, and his side severely bruised, his left shoulder dislocated, and that his entire body was badly wounded and bruised; that he remained in a state of unconsciousness for several days thereafter; was confined to his bed for more than thirty (30) days, and was unable to engage in his ordinary vocation, or to do any work whatever for three months.
That he was guilty of no contributory negligence; that the train was behind its advertised time, and by reason of his walking' in the same direction that the train was going he did not and could not see it; that it was not in sight when he commenced walking upon defendant company’s track; that it was running at a high rate of speed; gave no warning whatever of its approach, either by bell or whistle, and did not slacken its speed ''notwithstanding petitioner’s perilous position, plainly visible to its engineer.
That, under the ordinances of the City of Baton Rouge, the company was prohibited from running its trains, through the City of Baton Rouge, at a higher rate of speed than six (6) miles an hour, and that said bayou was the northern boundary of said city.
That petitioner was within the corporate limits of the City of Baton Rouge when struck by defendant’s train, as aforesaid, and the injuries, aforesaid, inflicted upon him, and the rate of speed at which the said train was going at the time was in direct violation of the city ordinance aforesaid.
That tiie engineer in charge of said train could easily have avoided the aforesaid injuries to petitioner by slackening speed of his train, by blowing a whistle, or ringing the bell, in time for petitioner to have escaped from said trestle, and that the failure and neglect of the company’s agent to do so was in wanton disregard of this petitioner’s life and safety.
Defendant pleaded the general issue and averred that plaintiff’s injuries were due proximately to the negligence of the plaintiff himself.
*1897 Opinion.
A little to the north of the City of Baton Rouge there exists a small bayou, known as Bayou Gracie, spanned by a trestle which was constructed over it by the Yazoo and Mississippi Yalley Railroad Company, and which forms part of its line of way or track.
The plaintiff and his family live in a house about 300 yards north of this bayou, and at about fifty feet east of the railroad track, between it and the Mississippi river.
On the morning of the 15th of September, 1898, the plaintiff, who had been upon the river bank, went to his house for a few moments, thence directly across to the railroad track, and, turning southward, walked leisurely to and on to the trestle. He had reached a point inside of the trestle, about sixty feet from its northern end, when the morning passenger train of the defendant company, going south, reached and passed him with unslackened speed. The trestle was open upon the sides, and the plaintiff, just after the locomotive tender, and one or more of the coaches had passed him, fell to the ground below the trestle, a distance of about twenty feet, and was severely injured.
The plaintiff claims, and testified himself to the fact, that he was struck by some portion of the passing train, and knocked off the trestle, while the defendant contends that he lost his self-possession and fell off the trestle, where he could have been in saffety had he preserved his composure. It asserts that it would have been a physical impossibility for him to have been struck by a train passing at the rate of speed at which the particular train was passing, and not been killed.
The plaintiff charges that the view for a mile and a half north of this trestle, up to and through the trestle, was almost level and in a direct line, without intervening obstructions of any kind; that the engineer and fireman upon the train should have seen him, and did, in fact, see him long before and as he entered the trestle; that they were bound to know and did know the construction of the trestle, and that he was in a position of peril from the moment of entering it, and should have given warning and danger signals earlier and longer than they did, and slackened at once the rate of speed at which the train was running; a rate of speed entirely too great and dangerous when approaching in the immediate vicinity of a.city like Baton Rouge, and a planked gravelled trestle, which the general public were known to habitually make use of *1898 as a highway or pathway going to and from Baton Rouge; that the ordinances of the City of Baton Rouge limited the speed of trains passing through the city to six miles, and while this particular trestle was a few feet north of the northern boundary line of the city, the speed of the train, just prior to reaching the line, should have been such as that on entering the city; it should have been moving at a rate not greater than six miles, and that any greater speed than that, at that time, and under the circumstances of having to pass through a trestle of the character of that over Bayou Grade, habitually used as it was, was an act of gross negligence, of wantonness and recklessness. That defendant's employees, notwithstanding they saw his position and realized his peril, kept straight up to and through the trestle at the rate of forty or forty-five miles an hour, and utterly indifferent to consequences.
The defendant claims that the whistle was sounded and the bell rung in due time; that the plaintiff was a trespasser on their track; that he lived in the neighborhood; had passed repeatedly over the trestle; knew its construction and any danger which would be attendant upon being upon it while a train was also passing through; that he knew that trains were constantly passing up and down the track, and at all hours; that he should have looked back before he entered the trestle to see if any train was approaching; that had he done so, he would have seen this particular train, as the view for over a mile and a half was level, straight and unobstructed; that if he did not look, the omission to do so was gross negligence; that if he did look and attempted, none the less, to cross, he was guilty of recklessness and assumed all the risks of doing so and of keeping his composure and his senses about him while passing through.
The evidence shows that the passenger train in question was about twenty or twenty-five minutes late, and it was evidently seeking to make up lost time by running very rapidly. The plaintiff says that he was under the impression, when he went upon the track, and into the trestle, that it had passed by; that in going upon the track he looked both ways to see if any train was in sight, and, seeing none, walked leisurely along the track and into the trestle; that he heard no whistle nor bell, as the wind, he said, was somewhat “forcible;” that his attention was first drawn to tire approaching train by the vibration of the rails, and, looking back, he saw it coming forward with great speed; that his first impulse was to turn back, but he decided he could rot *1899 reach the northern entrance again; that he then started to run forward for the southern entrance, but became convinced, after a few steps, he would also fail in that; that he then left the track and went to the side and attempted to save the situation by stooping and holding on as best he might to the timbers upon the side, and that while he was doing so, the train passed with great velocity and some portion of it, precisely which he did not know, undoubtedly struck and threw him off; that his belief was that he was struck by reason of the swinging or toppling sideways of the cars as they passed through — the “oscillation,” as he called it, of the rapidly moving cars.
The only evidence in the record as to the precise point on the track from which plaintiff fell, is his own testimony, which fixes the point at from fifty to sixty feet from the northern entrance. By the same testimony it appears .that, before reaching the trestle, he must have walked leisurely towards it on the track, some two or three hundred yards, and leisurely inside the trestle until he started to run. Referring to the passage of trains along the track, plaintiff testified that he and his family “had become used to them and paid no attention to them; that they didin’t even wake at night; that as to passing trains — of course he would see them — but he did not pay any attention to them, as it was a constant thing almost; that there was- always a train passing there; they used to switch right there; there were two or three! switches there.”
The evidence shows that the trestle, or bridge, is what is called a “gravel deck bridge,” described by the engineer as a bridge made by a box, with broad twelve-inch timbers on each side, placed there to hold in place the gravel, with which the box is filled, and upon the top of this gravel so filled in the tracks are laid.
It also shows that this railroad bridge is used by the general public for passage, but not to what extent nor at what hours, but that there is a crossing over Bayou Graeie over a small bridge at the “dyke,” which crossing, though not so expressly stated, we presume must be the public crossing.
The facts connected with the crossing of plaintiff on the morning in question, over the railroad bridge, or trestle, as shown by the evidence, place him before the court as having unquestionably led up by his own imprudent and reckless conduct to the injuries which he sustained from *1900 going into and attempting to pass over the. trestle at the time and under the circumstances that he did.
He was thoroughly familiar with the whole situation; the construction and length of the bridge or trestle; the running of the trains; the habitual places for the blowing of the whistles and the ringing of the bells, and yet, according- to his own statement, he did not listen for the whistle or the bell, but he walked deliberately for several hundred yards upon the railroad track, and “leisurely” into and over the trestle, with no attempt to discover what the existing- situation might be as to approaching trains, further than to cast his eyes up and down the track as he first reached it.
It was right that he should have done this, but certainly not right that he should, after walking two or three hundred yards upon the track, have not turned and looked back again before entering thcj bridge or trestle.
This was, in fact, the real point of danger, for up to that time a step or two to the right or left upon the slope of the railroad embankment would, doubtless, have placed him in a place of safety. It is not sufficient for a person, about to cross or walk along a railroad track, or into a railroad bridge or trestle, to stop, look and listen, at some time prior to doing so. The stopping, the looking and the listening, must be made at such a time and place as to make it judicious and sufficient to save the situation. In Snider vs. Railroad Company, 48 Ann., 12, this court (referring to this matter,) said: “The rule contemplates that this should be done at a time and place when the reason, upon which it is founded, should be effective. When the law requires steps of diligence and caution, it will not be satisfied by the substitution .therefor of vain and useless acts.”
So far as this plaintiff was concerned, as the event proved, he might as well have looked up and down the track from his own house an hour before.
The plaintiff in selecting, for his own convenience, á dangerous route to the city, instead of the safer one, and in passing into a trestle or bridge, a place of danger according to his own theory, with a full knowledge of the danger or perils he might encounter in so doing, voluntarily took upon himself risks, the results of which he can not shift off at will to other parties. (Schexnayder vs. Texas Pacific R. R. Company, 46 Ann., 248).
*1901 We are of the opinion that unless the plaintiff is able to make his case fall into that exceptional class of cases, where, notwithstanding that the injuries received by himself were brought about by contributory negligence on his part, the other party or parties also contributing by their fault to the injuries, would be legally bound for the consequences of the same, he can not recover.
The plaintiff urges that the case before the court is (under the evidence) one of that character; he invokes the principle laid down in McGuire vs. V. S. & P. R. R. Company, 46 Ann., 1543; Rice vs. Crescent City R. R. Company, 51 Ann., 114 (and authorities cited), and Grand Trunk Ry. Co. vs. Ives, 144 U. S., 408; that “if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured, an action for the injury can not be maintained unless it further appear that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequence of the injured party’s negligence.”
He contends that even if he were a trespasser, defendants had no right to recklessly and wantonly run him down, and knock him off the track, when they could, with reasonable care and exertion, have saved him.
The defendant denies, as we have said, that plaintiff was, in fact, knocked off the trestle- by the cars; that a position on the trestle, to the side of the track, was safe, but that he got confused or dazed and fell off. It maintains that plaintiff was a trespasser on the trestle; that it was not required; in the exercise of reasonable care and prudence, to keep a special lookout for or to discover trespassers, or anticipate their being on the track; that all that such care and prudence required was, when they were seen or discovered and found to be in peril, or likelihood of peril, to use all reasonable precautions and measures to ward off and prevent injury. (Philipps vs. East Tenn. & Ga. Railway Company, 87 Ga., 272; Bentley vs. Georgia Pacific Railway Company, 86 Ala., 485; Railroad Co. vs. Blanton, 84 Ala., 154; Railroad Company vs. Womach, 84 Ala., 149; Railroad Co. vs. Donovan, 84 Ala., 141).
That when parties are walking upon a railroad the engineer and fireman are authorized to assume that they will leave the track upon being-warned by the whistle or bell of an approaching train, and that they are not called on to slow down until it becomes manifest that the trespassers do not intend to do so; that, in this ease, there was no reason to suppose that the plaintiff would enter the trestle, as he had been warned *1902 before doing so by the whistle and the ringing of the bell just before or as he was entering the trestle. (Railroad Company vs. Miller, 25 Michigan, 279; Railroad Co. vs. McLaren, 62 Ind., 566; Railroad Co. vs. Smith, 52 Texas, 178; Schexnaydre vs. Texas Pacific R. R. Co., 46 Ann., 248).
Besides if he had heard the warning, he would have had ample time to return to the north end of the trestle.
The plaintiff replies that while it may not be the duty of a railroad company, generally, to keep a sx>ecial look out for trespassers on its tracks or on its bridges, yet it is its duty so to do when, by invitation or license, or acquiescence, they have become byways or pathways (to the knowledge of the company) for the public; whether this should be directly in the city or not; that in view of this fact, and the probability of persons being on the bridge or on the trestle, or on the track, at particular points, they should slow down so as to be prepared to meet the exigencies of some particular occasion, and in supxrort of this position they cite the Supreme Court of Alabama as saying, in Nave vs. A. G. S. R. R. Co. (95 Ala., 294), “that to run a train at a high rate of speed, and without signals of approach, at a point where trainmen have reason to believe that there are persons in exposed positions on the track, as over an unguarded crossing in a populous district of a city, or where the public are wont to pass on the track with such frequency and in such numbers — facts known to those in charge of the train- — the latter will be held to a knowledge of the probable consequences of maintaining great speed without warnings, so as to impute to them reckless indifference in respect thereto, and render their employees liable for injuries therefrom, notwithstanding there was negligence on the part of those injured, and no fault on the part of the servants after seeing the danger. The doctrine is not based on the idea that they ought sooner to have observed the danger, however, but on the ground that they knew of its existence — of the presence of people in positions of peril — as a matter of fact without seeing them at all in the particular instance.” Plaintiff further maintains that it makes no difference, in this case, whether he was knocked off by the train or whether he fell off.
We can not subscribe to the proposition that if the side of the trestle afforded a reasonably safe place for a person to stand on as a 'train passes by with great rapidity, that the company would be responsible *1903 for Ms losing Ms self-control and falling off under an apprehension of impending danger.
It is not enough that a person voluntarily placing himself in a position requiring steadiness or nerve should entertain the hope or the belief that he has the necessary firmness warranting his doing so; the belief must be justified by the fact. He cannot speculate on the subject. It is one of the disputed questions of fact whether the train struck the plaintiff, but the conclusions we have reached render the decision of that issue unnecessary.
The evidence shows that the engineer blew the station whistle at the usual place, and that the fireman rang-, the bell as the plaintiff was entering the trestle, so that this particular case shows the presence of facts which were absent in that referred to by the Supreme Court of Alabama. There is certainly force in the statement made by the defendant that, while it is very easy to determine from a side view of a track and trestle whether a person is actually upon the one or the other, it is difficult to fix the situation with precision when the trestle is open and Me view is a longtitudinal one down the track, but there is no uncerlainty in this ease as to plaintiff’s having been seen by the fireman as he entered the trestle, for he declares in his testimony that he did see him, though he did not tell the engineer of the fact. The seeing by the fireman was substantially the seeing by the engineer, for they are both on common duty, so far as the keeping of a lookout is concerned; one being on watch while the other is engaged in the performance of necessary duties, and both on watch at other times.
We were, at first, impressed with the belief that the trestle from which the plaintiff fell was so narrow as to carry with it, by its construction, per se, such imminent peril to a person within it simultaneously with a passing train as would require in the interest of common humanity the checking up of the train by the engineer on seeing a person pass upon the trestle, in front of the train, but we have reached the conclusion that the trestle was a reasonably safe place to stand upon even though a train should be passing at a rapid rate, and that the injury must have resulted either from plaintiff getting alarmed at the situation, or not having taken the position on the trestle which would have afforded certainty of safety.
Plaintiff says he was called on suddenly to meet an unexpected emergency, and can not be made liable for an error of judgment. There are *1904 certainly cases where parties claiming damages for personal injuries have been relieved from the charge of contributory negligence by reason of having, in a case of sudden danger, had recourse to injudicious methods for escape, but those are cases where the first act upon which the charge of contributory negligence is made to rest is this erroneous selection of a way to supposed safety, not where the party is already chargeable with acts of contributory negligence of which this particular is the mere supplement.
For the reasons assigned, it is hereby ordered, adjudged and decreed that the verdict of the jury he and it is hereby set aside, and the judgment of the court thereon rendered be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiff’s demand be rejected, and his suit dismissed with costs in both courts.
Rehearing refused.