(33 South. 63.)

No. 14,117.

BARNHILL v. TEXAS & P. RY. CO.

(Nov. 17, 1902.)

RAILROADS—ACCIDENT AT CROSSING.

1. One who reaches a railway crossing on a public highway is under the duty to stop, look and listen, and if a train be approaching it is his further duty to so act as to minimize the danger and insure his safety, if possible, under the circumstances and conditions then confronting him.

2. The party who has the last clear opportunity of avoiding an accident, must, notwithstanding the negligence of his opponent, avail himself of that opportunity.

3. The greater the difficulty of seeing and hearing the train as he approaches a crossing, the greater caution the law imposes upon the traveler.

(Syllabus by the Court.)

Appeal from judicial district court, parish of Natchitoches; Charles V. Porter, Judge.

Action by Delilah A. Barnhill against the Texas & Pacific Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Jack & Fleming, for appellant. Madison C. Mosely (Howe, Spencer & Cocke, of counsel), for appellee.

BLANCHARD, J. Plaintiff's husband was struck and killed by defendant's train, and, in consequence, this suit is brought to recover $6,000 damages.

The petition charges negligence and fault of defendant's agents and employés in this, to wit:—that the train was being driven, or permitted to run, at a reckless rate of speed, and there was failure on part of those in charge of it to give the usual and necessary signals and warnings of its approach at the time of the accident which caused the death of her husband.

It is represented that the view of the approaching train from the crossing where the deceased was struck up to the depot, a distance of 300 yards or more, was obstructed by box cars resting on a switch track which paralleled the main track, and, also, by lumber stacked on a lumber yard, and by a shingle shed and cotton seed house, which were located on the company's right of way, and that on account of these obstructions defendant was legally charged with the exercise of extraordinary caution in running its train by said point.

The defense is a denial of negligence and the plea that the deceased came to his death through his own imprudence and recklessness.

Trial by jury was waived and the case submitted to the judge, from whose decision in

favor of defendant the plaintiff prosecutes this appeal.

We have reached the same conclusion the trial judge did. He has, in a lucid and able opinion, correctly, we think, appreciated the facts in the case and properly applied the law.

Marthaville, in the parish of Natchitoches, is located on the two sides of defendant company's track. It is an incorporated village of about 250 people.

The railway track there runs east and west. The depot is on the north side of the tracks, for there are two of them,—a switch track and the main line. The latter is south of the other. The lumber platform, shingle shed and cotton seed house, spoken of in the petition, are also on the north side of the tracks.

At the distance of 849 feet from the eastern end of the depot is a public railway crossing. It is much used, but not the principal crossing in the town. At this crossing plaintiff's husband was struck and killed by an east-bound through-freight train. The casualty occurred between 1 and 2 o'clock in the day.

The deceased was a blacksmith and woodworkman, a sober and industrious man, who supported himself and wife (present plaintiff) by his daily labor. There were no children of the marriage.

At the time of his death Barnhill was 67 years old. He was a one-legged man—one of his legs having been amputated below the knee in the year 1886. In walking he used a wooden or "peg leg," which was attached to the stump of the amputated limb. Notwithstanding his age and crippled condition he was active and strong, and in the full possession of his faculties of seeing and hearing.

His residence was a short distance north of the railroad track, while his workshop was on the south side of the track. He had been in the habit of crossing at the place where he was killed several times a day for years.

At the point in question the track, looking westward, is straight for a distance of about 2,000 feet.

The switch track referred to above joins the main track a short distance—say 100 feet —below or to the eastward of the crossing. This switch track extends from the crossing westward (passing the depot) a distance of 1,998 feet.

At the crossing, the distance between the tracks—from the inside rail of the switch to the nearest rail of the main track—is some inches over 8 feet.

The crossing is on a level with the surrounding country.

Barnhill had been home to dinner. Finishing that meal, he was on his way back to his shop, when in crossing the main track he was struck by the locomotive and killed. He had gotten nearly over the track when the impact came. His body was knocked or thrown over to the south side of the track.

The train which struck him did not stop at the depot· in the village. It had stopped at the water tank two or three miles above. Then, on approaching Marthaville, it appears to have slowed down somewhat, with the view of stopping should there be a signal but indicating orders to stop. Otherwise it would not stop, for it was a "through freight."

Not perceiving any signal indicating orders to stop, the engineer .whistled the brakes up and the speed of the train was accelerated.

There was there a "down grade" for some distance. The decline was eastward. Because of this there was no necessity to use steam to propel the train and it was shut off.

The engineer sounded his whistle at the usual distance from the depot to announce the approach of the train, and the preponderance of testimony establishes that as he passed through the village he sounded with the whistle the signals usual at railway crossings. The evidence also establishes, we think, that the bell was ringing all the way down the track within the limits of the village.

As to the speed of the train the witnesses for the plaintiff estimate it at from 25 to 45 miles an hour, while those for the defendant at from 12 to 15 miles an hour, except one, Mr. Prothro, who testified that since the accident in question he timed a train which he thinks was running at about the same rate of speed as the one which killed Barnhill, and it was making about 23 miles an hour.

We agree with the district judge that the speed of the train in question was considerably in excess of 12 or 15 miles an hour; that it was nearer 25 miles an hour; and that it was negligence and fault on part of defendant's employés to run a freight train a quarter of a mile long through an incor-

porated village on a down grade at any such rate of speed. To do so was in reckless disregard of the safety of those who were compelled to cross the track.

Certainly, no greater rate of speed than 15 miles an hour should have been permitted, and this, too, without regard to whether there was or was not a town ordinance regulating the rate of speed. Sundmaker v. Railway Co., 106 La. 111, 30 South. 285.

Considering the dangerous rapidity with which this train was permitted to rush through the town, we would hold this defendant liable in damages for the death of Barnhill were it not for his own inexcusable negligence.

When he reached the railway track on the crossing it was his duty to stop, look and listen, and then so act as to minimize the danger and insure his safety, if possible, under the circumstances and conditions then confronting him. He should have acted with discretion, prudence, caution.

Both hearing and seeing the train rapidly approaching, and within 40 or 50 yards of the crossing, he should have stopped and let it pass. Instead of doing so, he attempted to cross ahead of it, thus assuming all the risks of the situation. He failed to get over in time, was run down and killed.

All the more he should have waited the passage of the train considering his crippled condition.

Had he passed even midway between the switch track and the main track, on the latter of which the train was running, he would have been safe.

He did not do so and his recklessness in attempting to cross just ahead of the rapidly approaching train must be held to have been the proximate cause of the fatality which overtook him.

When he was seen by the engineer and when it became apparent to the latter he would attempt to cross the track, it was impossible for the engineer to stop or check the train so as to avoid the impact. The engineer as soon as he saw him whistled the danger signal, but it was either not heeded or it was then too late for the doomed man to heed it.

The last chance to avoid the accident was thus with Barnhill. He should have availed himself of it. The principle here invoked has been tersely put in the following language:—

"The party who has the last clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it."

See Barrows, Neg. 53.

It is contended by plaintiff that, on approaching the tracks, Barnhill did not see the train; that his view was obstructed by certain box cars located on the side track and by the structures on the railway reservation heretofore mentioned.

The nearest to him of the structures on the right of way was the shingle shed and that was 228 feet away. The distance from this shed to the center of the main line of the railway was 23.2 feet.

There is conflict of testimony as to the number of box cars on the switch track. The conclusion to which we have come in respect to it is the same as that of the district judge, and that is, there were but two, and the one of these nearer to the crossing was 249 feet from it.

So that when Barnhill reached the outer rail of the side track he undoubtedly had a view up the main track sufficiently distant to have enabled him to observe the approaching train and avoid it. When he reached the center of the side track his view extended still further up the line, and when he reached the inside rail of the side track he had a view of 2,000 feet or more up the track. At that point he was still 8 feet from the nearest rail of the main track, and the approaching train, with its bell ringing and a great noise otherwise, was within 50 yards of him and thundering down upon him. To have attempted, under these circumstances, to cross the track ahead of the train was utter recklessness.

But even if there had been other box cars upon the side track and one of these was within 10 to 20 feet of the crossing, as is the contention of plaintiff, it would avail nothing. The greater the difficulty of Barnhill's seeing the train as he approached the crossing, the greater caution the law imposed upon him. Vincent v. Steamship Co., 48 La. Ann. 935, 20 South. 207, 55 Am. St. Rep. 287.

The rule is well stated in 7 Am. & Eng. Enc. Law (2d Ed.) p. 435:—

"The traveler, however, is rigidly required to do all that care and prudence would dictate to avoid injury, and the greater the dan-

ger the greater the care that must be exercised to avoid it, and where, because of physical infirmities, darkness, snow, fog, the inclemency of the weather, buildings or other obstructions and hindrances, it is more than usually difficult to see or hear, greater precaution must be taken to avoid injury than would otherwise be necessary."

If the box car upon the switch was in close proximity to the crossing, it was Barnhill's duty to have peered around its side cautiously before venturing onto the main track. Had he done this there was nothing to have prevented his observing the approaching train.

To have stepped suddenly from behind a box car on the main track was the height of imprudence. Beach, Contrib. Neg. pp. 192, 193. A plaintiff who has contributed, proximately, to an injury cannot recover even if he succeeds in proving fault on part of another. Schwartz v. Railroad Co., 30 La. Ann. 15; Murray v. Railroad Co., 31 La. Ann. 490; Weeks v. Railroad Co., 32 La. Ann. 615; Fleytas v. Railroad Co., 18 La. Ann. 339, 36 Am. Dec. 658; Carlisle v. Holton, 3 La. Ann. 48, 48 Am. Dec. 440; Murphy v. Diamond, Id. 441; Hubgh v. Railroad Co., 6 La. Ann. 496, 54 Am. Dec. 565; Hill v. Railroad Co., 11 La. Ann. 292; Knight v. Railroad Co., 23 La. Ann. 462; Laicher v. Railroad Co., 28 La. Ann. 320; Johnson v. Railroad Co., 27 La. Ann. 53; Damont v. Railroad Co., 9 La. Ann. 441, 61 Am. Dec. 214; Montfort v. Schmidt, 36 La. Ann. 750; Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Vincent v. Steamship Co., 48 La. Ann. 933, 20 South. 207, 55 Am. St. Rep. 287; Provost v. Railroad Co., 52 La. Ann. 1894, 28 South. 305; Childs v. Railroad Co., 33 La. Ann. 154.

"The correct principle," says Mr. Rorer in his work on Railroads (volume 11, pp. 1031–1033), "is that a party cannot expose himself with impunity to injury from the possible negligence of another, and, if injury ensue, recover against the other for such injury."

The familiar rule of law that one, who is suddenly placed in a dangerous situation through the negligence of another, is not responsible for an error in judgment in selecting the wrong mode of escape, has no application here.

Nor do we think the Sundmaker Case, 106 La. 111, 30 South. 285, relied on with so

much confidence by plaintiff's counsel, is in point.

Judgment affirmed.

BREAUX, J., concurs in the decree.