ELLIS, Judge.
An action for damages was instituted January 111, 1943 upon behalf of the widow and five minor children of Wesley John Guidry, who was killed when a truck he was driving was struck by a passenger train of the Texas & New Orleans Railroad Co. An emancipated minor son of the deceased joined in the suit.
An exception of no right or cause of. action was sustained by the District Court on October 9, 1943. This Court of Appeal remanded the case to allow an amendment of plaintiffs’ petition, which amendment was made and the case was tried upon its merits October 1, 1945, taken under advisement, with leave given to counsel to submit the case on written briefs. Plaintiffs’ original bi’ief was not filed until September 21, 1950, and thereafter opposing briefs were filed and the District Court on May 15, 1951 rendered judgment, pursuant to written reasons therefor, rejecting plaintiffs’ demands at their 'cost. From this decision plaintiffs have appealed.
The collision which resulted in the death of Guidry occurred at approximately 6:15 a. m. on October 21, 1942, about one mile east of the Town of Vinton, where a private road leads from U. S. Highway No. 90 to the decedent’s home, crossing the inain line of the defendant’s railroad. Guidry lived approximately 300 feet north of the railroad track, which runs east and west at this point, and is straight and level for several miles in either direction. The decedent was driving his farm truck in a southerly direction along the above described private road, endeavoring to cross the track, when his truck was stru'ek by one of the defendant’s passenger trains, and he was killed instantly.
Plaintiffs maintain that the sole and only cause of the accident was negligent acts of the defendant, detailed as follows:
(1) That the speed of the train, approximately 60 miles an hour, was excessive.
(2.) That the operators of the train gave no warning signals of its approach, although traveling in darkness and a heavy fog.
(3) That the defendant permitted its right of way to grow up' in weeds, grass and trees, so that the deceased was unable to see the approach of the' train.
(4) That the train was running about one and one-half hours behind schedule at the time the accident occurred.
(5) That the operators of the train were cognizant of all of the facts above set out, *613 and- also knew the train was traveling through a farming section of the country and that farmers were liable to be using the private crossings during early hours of the morning.
The defendant concedés the train was traveling at about 60 miles per hour; that the accident occurred in darkness, when the weather was foggy; that the train was about 30 minutes late. It denies there was any failure of the operators of the train to give warning signals of its approach to the crossing, contending that the bell on the locomotive was ringing, and its whistle was being blown to warn of the train’s approach. It is also denied that the decedent’s view was obstructed. It is further denied that any of the facts or circumstances set out by plaintiffs constitute negligence on the part c»f the defendant or that they impose any duty on the operators of the train to give a signal before reaching a private crossing. Defendant then alleges the accident happened solely because of the negligence of the deceased in going upon the railroad track without stopping, looking and listening for a train; that if he had taken the proper caution he would have both heard and seen the train, pleading in the alternative the deceased was guilty of contributory negligence in driving upon the track without proper caution.
1.
Perhaps the latest expression concerning the speed of trains in vicinities similar to the situs of this accident is found in Moody v. Texas & P. Ry. Co., La.App., 37 So.2d 346, 348, wherein it is stated: “The general rule with regard to the operation of passenger trains in the open country is that any speed is permissible which is consistent with their own safety and that of their passengers. See: Davis et al. v. Alexandria & Western Railway Co., 152 La. 898, 94 So. 436; Campbell & Company v. Texas & Pacific Railroad Co., La.App., 152 So. 351.”
There is no question but that the accident happened in open country and that the track here was straight and level. The speed of the train is fixed by the firemen and engineer at approximately 60 to 65 miles per hour. There is no evidence whatsoever in the record that this speed was unsafe for either equipment or passengers.
However, plaintiffs contend the presence of the fog removes this case from the general rule and consequently this speed constituted an act of negligence under the circumstances. We cannot agree with this contention since this argument was forwarded before this Court in Homeland Insurance Co. v. Thompson, La.App., 12 So.2d 62, 64, and we there decided there was’ ho rule of law requiring trains to be ' driven at a rate of speed so they could be stopped within the range of the operator’s' vision. Further, that a railroad company was not required to slow its trains during-rainy or cloudy, weather when traveling through a sparsely settled community. There we said: “To require a train to be so operated in a sparsely settled community and at a time when traffic is not usually present at such a speed as to permit its-being stopped within the distance an object may be seen on the track during a heavy fog would seriously interfere with train schedules in which the public is as much interested as the railroad company.”
Our conclusions in the quoted case were based upon the authorities cited therein.
This doctrine was recognized by the Second Circuit Court of Appeal in Smith v. Thompson, La.App., 185 So. 71, 74: “-It is well recognized that fog and rain prevent a locomotive’s operators from having good visibility of the tracks ahead, just as does the presence of a curve when the train is traveling at night; yet the courts have held on several occasions that a railroad company is not required to slow its trains during rainy or foggy weather. Foster v. Texas and Pacific Railroad Co., 5 La.App. 601; Jeter v. Texas & Pacific Railroad Co., [La.App., 149 So. 144] and Campbell & Company v. Texas & Pacific Railroad Co., [La.App., 152 So. 351].”
2.
There is some conflict in the testimony as to whether or not a signal was given by the operators of the train prior to the accident. Two witnesses testified no signals were given, but it developed they. were asleep *614 prior to and at the time of the accident so their testimony is of no consequence. Mrs. Guidry, plaintiff and wife of the deceased, testified she actually saw the train when it struck her husband’s truck, but as to whether or not any signals were given, she testified under cross examination, “It might have blown but I did not hear it.” — Another witness, Mr. Michon, brother of Mrs. Guidry, who was in the back yard of the deceased’s house at the time of the accident, stated he did not hear any signals, but later said, “I -am pretty sure I would have heard it if I had been noticing.”
On the other hand, the testimony of James Welsh, the engineer of the train, Mussick, the fireman, W. L. Rogers, train baggage passenger, and his wife, Mrs. Ruth Rogers, who was in the baggage car with her husband, is very positive that the automatic bell on the locomotive had been ringing steadily for at least two' or three miles before the accident, and that the whistle had been blowing steadily for some time before it reached the crossing where the accident occurred.
We must conclude from the evidence ample warning was given of the train’s approach to the crossing, even though we consider the unusual circumstances of fog and darkness made warning signals a legal duty.
3.
It seems clear from the photographs which were introduced in evidence, some of which were taken within a few hours after the accident occurred, that in clear weather the decedent, after reaching a point within 50 feet of the track, should have been able to have seen the approaching train for a distance of at least a thousand feet before it reached the crossing, and the Trial Judge so concluded. The weeds and willow trees which plaintiffs maintain obstructed the view of approaching trains from the east were located approximately 460 feet east of the center line of the private road the deceased was traveling, and about 34 feet north of the center line of the railroad tracks. While this growth reached a maximum height of seven or eight feet, they were near the foot of an embankment and consequently extended only about four feet higher than the surface of the right of way. The plaintiffs contend that this growth was negligently allowed to remain there by the defendant, and prevented the deceased from seeing the train as it approached from the east, and that the general rule that a railroad train is not required to sound a warning for a private crossing in a rural area or diminish its speed, has no application under these special circumstances. This general rule is expressed in Guidry et al. v. Texas & N. O. R. Co., La.App., 20 So.2d 637; Lockhart v. Missouri Pacific R. R. Co., La.App., 153 So. 577. However, we have concluded signals were given.
The photographs, as well as the oral testimony, show that after reaching a point within 34 feet of the center line of the track the decedent should have been able to have seen the approaching train for at least twice that distance prior to the time it would reach the crossing. Also it is to be considered the deceased had lived in that location for two years, was familiar with the crossing, and had warned at least his sons and his wife of the necessity to stop and look for trains before proceeding. At least 40 trains pass this crossing daily, and no doubt the decedent knew as well as anyone the distance which he could observe a locomotive approaching from the east.
There is no doubt but that the reason the engineer did not see Mr. Guidry’s truck, nor did Mr. Guidry see the locomotive in time to avoid the collision was due to the presence of a fog. This impediment to visibility does not impose upon the operators of the locomotive a duty to slow or stop the train, but there is under such conditions a duty imposed upon the operator of a motor vehicle to use increased caution or a greater degree thereof in crossing a railroad track. Barnhill v. Texas & P. R. R. Co., 109 La. 43, 33 So. 63; Lockhart v. Missouri Pacific R. R. Co., La.App., 153 So. 577. (The last cited case imposes a duty even upon a guest in an automobile to look, listen and protest to the driver before crossing a private crossing.)
4.
The train which struck the deceased’s truck was 38 minutes late from *615 the scheduled time at the scene of the accident. This fact constitutes no negligence upon the paid of the defendant, nor could the decedent be relieved of his obligations and duties when crossing a railroad, since he is required to exercise the same degree of caution for trains whether they are on schedule or not. Vincent v. Morgan’s La. & Texas R. & S. Co., 48 La.Ann. 933, 20 So. 207, 209, answered such a contention as the one forwarded by plaintiffs here, in stating: “Did the simple fact that the hour for one of the regular trains had passed, and that for the other had not been reached, warrant the belief that no train was likely to pass ? It has been held that it does not; that parties having occasion to cross a track must bear in mind that, in the management and business of railroads, special trains are liable to be sent forward at any moment; and that the rule that a person, before attempting to cross a track, must stop, look, and listen to guard against danger, is not confined to certain hours of the day or night, nor limited to particular trains. A railroad track of itself has been held to be a warning of danger.” .
5.
It is clear that even though the operators of the train knew all of the facts which plaintiffs contend constitute negligence, and also that any crossing along defendant’s right of way was likely to be used, yet we cannot conclude there was any negligence upon the part of the operators of the train, whereas the decedent was clearly guilty of contributory negligence.
The judgment appealed from is affirmed.