## MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS

v.

## LANE et al.

No. 14503.

United States Court of Appeals, Fifth Circuit.

June 25, 1954.

Rehearing Denied July 20, 1954.

Ben H. Rice, III, and C. E. Bryson, Houston, Tex., G. H. Penland, Dallas, Tex., Vinson, Elkins, Weems & Searls, Houston, Tex., for appellant.

J. Edwin Smith, Houston, Tex., Terry L. Jacks, San Marcos, Tex. (Smith & Lehmann, Houston, Tex., of counsel), for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HOLMES, Circuit Judge.

This is an action for damages, under the statutory law of Texas, for the alleged wrongful death of Homer Edward Lane, the husband of Clarice Ann Lane and the father of Rusty Ann Lane. Federal jurisdiction depends solely upon diversity of citizenship and the requisite jurisdictional amount. The injuries causing death occurred at a railroad crossing in Texas, and the issue as to liability is governed by the laws of that state.

The deceased met his death at a railroad crossing while riding as a passenger in an automobile, which collided with a freight train operated by appellant. The accident occurred on March 2, 1951, about 10:30 p. m. on a clear chilly night, and numerous acts of negligence on the part of the railroad company were alleged in the complaint; but in a trial upon the merits before the judge and a jury in the court below, the defendant was exonerated of every allegation of negligence except one. By special verdict, in answer to questions propounded by the court, the jury found that the train crew was negligent, shortly before or at the time of the collision, in so far as the fireman did not notify the engineer of the approaching automobile; and that such negligence was the proximate cause of the collision. The jury also found that the deceased was not negligent; and that the operators of the train did not discover or realize the position of peril of the deceased in time to avoid the accident.

After discovering and realizing the position of peril of the deceased, as the jury found, the operators of the train did not fail to exercise ordinary care in the use of all the means at their command, commensurate with their own safety and with the safety of the train and its crew, to avoid the collision. While conceding that the evidence of negligence on the part of the fireman was not strong with respect to his failure to warn the engineer of the approaching automobile, and that perhaps the argument to support the verdict on this ground was somewhat tenuous, the court below was unable to say as a matter of law that the special verdict was wrong and should be disregarded. Final judgment was accordingly entered on the verdict for the amounts fixed by the jury.

The plain facts are that, as this automobile approached the crossing, it was in a position from which the train was plainly visible if the driver or occupants of the car had looked. The driver did, in fact, see the train from behind the tank cars and tried to stop, but he was going at such a rate of speed that he was unable to do so before the impact. The train consisted of two diesel engines, a caboose, 51 cars, 18 loaded and 33 empty, and was travelling at a speed of about 35 miles per hour. The head-light of the locomotive was shining. The deceased was sitting in the front seat on the right hand side of the car at the time of the collision. The approaching automobile had to pass over three railroad tracks before it reached the main line on which the freight train was travelling.

As to whether or not judgment for the plaintiffs should have been entered upon the verdict of the jury, the crucial question is: Was there substantial evidence to support the special finding that the fireman was negligent in failing to notify the engineer of the approaching automobile prior to the time when it became apparently probable that the car was going to strike the locomotive? Taking, as it said, a sympathetic view of the verdict and the evidence to support it, the court below reasoned that the fireman knew of the presence of the tank cars long before the train reached the crossing in question; and, from his vantage point on the left side of the engine, he saw the lights of the automobile when it was approximately 1000 feet from the crossing; it was moving at a high rate of speed; and, without calling the attention of the engineer to this fact, he continued to watch the approaching car maintain the same speed until it ran into the side of the engine. He first called out to the engineer when the car was only a few feet from the engine, and when it was apparent that a collision was inevitable. The district court further summarized the facts as follows:

"The deceased was riding in the right front seat. Neither the driver nor any of the four passengers of the car gave any indication of observing the train until a moment before the collision, when Lane cried a warning to the driver, but the crash occurred immediately thereafter.

The vehicle struck the left side of the engine. The train was proceeding at a speed of approximately thirty-five miles per hour. Its headlight was burning, its whistle was being sounded and the bell rung. The crossing was open and the view practically unobstructed save for the presence of a string of five tank cars, which were stationed upon a sidetrack in such position as to be between the track upon which the train was moving and the highway. The end of the tank car nearest the highway was located 57½ feet from the center line thereof; and as the train approached the crossing, it was behind the tank cars until it reached such point. There is strong evidence that the engine was somewhat higher above the ground than the tank cars, and that the headlight and other portions of the engine were discernible from the highway along which the vehicle approached the crossing; but the presence of the tank cars undoubtedly obscured the view of the occupants of the car at least to some extent. The vehicle left skid marks of 81 feet before striking the engine."

The obvious purpose of the fireman's notifying the engineer prior to the perilous situation of the car was to give him knowledge that an automobile was approaching the crossing at a distance of about 1000 feet. It is manifest that unless such knowledge to the engineer would have enabled him to do something that was not being done by him, and which an ordinarily prudent person in similar circumstances would have done to avoid the collision, then such notice would have been a vain and useless thing, and the fireman was under no duty to give it. The jury has expressly found that the defendant was not negligent prior to the time that the operators of the train discovered the perilous condition of the deceased, and it has impliedly found that the defendant was not negligent in any other respect, except as to

the fireman's failure to warn the engineer of the approaching automobile.

This brings us to the legal question as to whether, when his train is approaching a crossing, a fireman is obligated to notify the engineer that an automobile is also approaching the same crossing prior to the time that the approaching car is in a perilous position. The answer is no unless the engineer is doing something that he ought not to be doing or failing to do something that he ought to be doing, neither of which hypotheses was true in this instance. We conclude that, under the law of Texas, prior to the time that the fireman discovered the perilous position of the deceased, he had the right to assume that the driver of the approaching automobile would stop it before reaching the crossing. Roth v. Swanson, 8 Cir., 145 F.2d 262, 269; Texas & N. O. R. Co. v. Wagner, Tex.Civ. App., 262 S.W. 902; Wichita Falls & S. R. Co. v. Anderson, Tex.Civ.App., 144 S.W.2d 441; Texas & N. O. R. Co. v. Brannen, 140 Tex. 52, 166 S.W.2d 112; Texas & N. O. R. Co. v. Stewart, Tex.Civ. App., 248 S.W.2d 177; Ford v. Panhandle & S. F. Ry. Co., 151 Tex. 538, 252 S.W.2d 561; Parsons v. New York Cent. R. Co., 127 W.Va. 619, 34 S.E.2d 334; Engberg v. Great Northern Ry. Co., 207 Minn. 194, 290 N.W. 579, 583; Article 6701d, § 86, Vernon's Ann.Civ.St.Tex., Restatement of Torts, § 301(2).

The evidence of the fireman may be added to the above well settled rule of law that he had the right to assume that the driver of an approaching automobile would stop it before reaching the crossing. He testified that the car ran into the side of the engine; that immediately upon realizing the danger, he notified the engineer; that they went into emergency, which was all they could do; and that he did not notify the engineer sooner because he figured the driver of the automobile would stop, as most people do, before reaching the crossing. Accordingly, we find no substantial evidence upon which to base the finding of the jury as to the negligence of the fireman in fail-

ing to notify the engineer of the approaching automobile. The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.