The KANSAS CITY SOUTHERN RAIL-WAY COMPANY, Appellant,

v.

Mrs. Elva WIGGINS, Individually and as Guardian Ad Litem for Paula Wiggins and Gene Wiggins, Appellees.

No. 15920.

United States Court of Appeals
Fifth Circuit.

May 31, 1956.

Rehearing Denied June 28, 1956.

Thos. F. Porter, Porter & Stewart, Lake Charles, La., for defendant-appellant, the Kansas City Southern Ry. Co.

John A. Patin, Lake Charles, La., Carl Waldman, Beaumont, Tex., for plaintiffs-appellees.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

BROWN, Circuit Judge.

The Railroad, appealing from adverse judgment on a jury verdict allowing recovery for the death of Sgt. Wiggins whose car was hit broadside as it crossed the track at Cooper Station, Louisiana, during the "dark dusk" of an October evening, contends that it should have had an instructed verdict both because of the absence of negligence on its part and because of contributory negligence as a matter of law on the part of the driver, Sgt. Wiggins.

The Railroad starts with the well accepted Louisiana doctrines often

voiced by this Court: that a train crew need not anticipate that an approaching vehicle will negligently fail to stop [1] but may ordinarily assume [2] that the vehicle will stop in time and, accordingly, the train is permitted to proceed at a speed consistent with its own safety;[3] but that, correlatively, proceeding across a known railroad crossing without seeing or hearing that which, in prudence could have been seen or heard, may convict the driver of contributory negligence as a matter of law.[4]

It then emphasizes uncontradicted evidence which gives an apparent factual basis for the application of these doctrines: The engine headlight was burning, the airhorn was blown, and the bell rung. The highway approach and crossing was so located that from the time the vehicle was about 200 feet from the crossing, the headlight of the engine, then 400 feet from the crossing, was clearly visible and was shining on the crossing for at least 250 feet. The speed of the car (not over 10 to 15 mph) within 50 feet of the crossing was such that it could have been stopped, as several actual demonstrations proved, almost instantly. The engineer, after first sighting the lights of the oncoming car when the engine was 600 feet away, became apprehensive that the car was coming on when the engine was approximately 100 feet from the crossing; since he was then blowing signals and ringing bells, all he could do was make an emergency stop which, executed efficiently, did and would, at that speed (35 to 40 mph) take about 1500 feet.

But this disregards the main thrust of the plaintiff's case and the abundant evidence supporting it which the jury could, and did, credit:—the crossing was one of unusual and extraordinary hazards imposing on the Railroad the duties of adequate warning and prudent physical operation of trains in the light of these special hazards.

Cooper's Station is in fact nothing but a crossing and that crossing is a dirt or gravel road. Scattered on both sides of the track over an area of one hundred fifty yards or so along it, there are but three or four houses and a small store. Approaching it as did Sgt. Wiggins from the north, there was nothing to indicate either a small rural settlement or a railroad crossing. The track runs practically north and south, and the road, at the actual crossing, intersects at right angles

---

1. The engine crew cannot be held negligent for failing to anticipate the negligence of a driver approaching the crossing; Allen v. Texas & Pacific Ry. Co., 5 Cir., 195 F.2d 545; Bordenave v. Texas & N. O. R. Co., La.App., 46 So.2d 525; Brown v. Louisville & Nashville R. Co., 5 Cir., 234 F.2d 204.

2. An engineer approaching a crossing has the right to rely on the assumption that an approaching automobile will stop before reaching the crossing, and if at the time the engineer realizes the automobile is not going to stop, it is then too late to avoid the accident, there is no liability on the part of the Railroad. Bordenave v. Texas & N. O. R. Co., supra; Matthews v. New Orleans Terminal Co., La. App., 45 So.2d 547; Williamson v. Texas & Pacific R. Co., La.App., 66 So.2d 621; Cook v. Louisiana & N. W. R. Co., 130 La.App. 917, 58 So. 767; Missouri-Kansas-Texas R. Co. of Texas v. Lane, 5 Cir., 213 F.2d 851, and second appeal 5 Cir., 223 F.2d 159.

3. A train is not required to slow down at ordinary crossings in the open country, and any speed consistent with safety of the train is permissible; Bahry v. Illinois Central Ry. Co., La.App., 13 So. 2d 78, 80; Davis v. Alexandria & W. R. Co., 152 La. 898, 94 So. 436.

4. United States Fidelity & Guaranty Co. v. McCullough, 5 Cir., 202 F.2d 269, 270, quoting with approval Raziano v. Trauth, 15 La.App. 650, 131 So. 212; Louisiana & Arkansas Railway Co. v. Jackson, 5 Cir., 95 F.2d 369; Illinois Central R. Co. v. Leichner, 5 Cir., 19 F.2d 118, 119; Audirsch v. Texas & Pacific Ry. Co., 5 Cir., 195 F.2d 629; Allen v. Texas & Pacific Ry. Co., supra, and see, from Louisiana District Courts, Williams v. Thompson, D.C.W.D.La., 48 F.Supp. 760; Lewis v. Thompson, D.C.W.D.La., 47 F.Supp. 435; Butler v. Chicago, R. I. & P. Ry. Co., D.C.W.D.La., 46 F.Supp. 905.

but only for a short distance. There is little specific testimony reflecting the volume of travel on this country road, but there was substantial agreement that it was frequently used as it was one of two ways to get from Camp Polk (about 3 miles to the east) to the main north-south highway, U.S. 171, leading to De Ridder, approximately 15 miles to the south, where apparently may soldiers and civilian camp employees lived.

For about a quarter of a mile this country road runs along the east side of the track converging at about a 20-degree angle. This triangular area between the track and the road is heavily wooded. At a point approximately 50 feet east of the tracks, the road turns almost at right angles to the west, proceeds across the main line and a spur track for about 175 feet where it makes a T intersection with U.S. 171 which parallels the railroad track. A few feet beyond the sharp turn to the right and located 40 feet from the crossing is a statutory warning sign reading "Louisiana Law STOP." However, the bottom of the sign was over 9 feet above the ground and generally, it was agreed, out of an automobile driver's normal line of nighttime vision. In any case the sign faced east so that its warning legend would not be seen until after the turn and when a vehicle would be nearly on top of the track.

Nothing about the roadway gave indication that there was a railroad crossing. Some testimony referred to it as a "steep" incline, but the physical facts are undisputed that the difference in grade was but 5½ feet over 100 feet (about 6%). Photographs reflect that this was a typical soft-surfaced country road with usual bumps, small dips, traffic ruts, and humps. After the turn, there were no sharp or well-defined ditches or shoulders, nor was the incline itself so steep or situated as to serve as a warning that this was a railroad crossing rather than an ordinary rise in the road.

This setting gave special significance to the area west of the tracks. The main highway, U.S. 171, paralleling the rail-road tracks, carried a large volume of north-south traffic, including large diesel highway trucks using airhorns. Light from vehicle lights of northbound traffic could be seen readily by a driver of a southbound car on the little road. The sound of blasts from an airhorn or the presence of light from the south could well have been interpreted as indicating the approach, not of a train, but highway vehicles from that direction. This would be especially true in the dusk when natural light is inadequate to reflect distant objects, but artificial light does not throw sharply defined beams.

■■ From expert testimony characterizing the crossing as unusually hazardous, and this combination of factors which would have permitted men in the light of their common experience to draw the same conclusions, the jury, under proper instructions not complained of, held, by the verdict for plaintiff, that the crossing was unsafe. The Louisiana doctrine that ordinarily a railroad need not maintain gates, flagmen, or special warning devices for open country crossings, Eggleston v. Louisiana & A. R. Co., La.App., 192 So. 774, 778; Alanza v. Texas & Pacific Ry. Co., La.App., 32 So. 2d 341, 344, contains its own reflex where reasonable men can say that peculiar and extraordinary danger exists. It was for the jury, therefore, to say whether the Railroad had complied with its duty either adequately to mark and warn of the crossing, or, knowing the nature of the crossing, to so operate the train as to be able to avoid damage to persons unaware of it. The jury could conclude that this latter facet conditioned the speed at which the train could run. Considering the curve in the track, while the engineer could first see the crossing when 900 feet away, he could not see the little road until 600 feet off. Since the train at 35 to 40 mph required nearly 1,500 feet to stop, neither distance was sufficient. The jury could reasonably determine that speed would have to be regulated to permit the train to be stopped if a vehicle, unaware of the

hazardous crossing, were seen approaching it.

█ Faced with this finding of fault, the Railroad's escape depends on our disregarding the jury verdict to hold that Sgt. Wiggins was contributorily negligent as a matter of law. There is no basis for this. His conduct must be measured in the light of this dangerous crossing. Conceding that he must be charged with having seen the light coming from the engine headlight and heard one or more of the airhorn blasts (even though on this cool October evening, all of the windows of his car were closed), it was for the jury to determine whether a reasonably prudent person might think this was coming from vehicles on the connecting highway. Neither the crossing nor the sound or light made it certain to the driver that he was coming onto a railroad track, or that a train was approaching in the vicinity. Whether seeing and hearing what he did, he ought then to have known it was a train was for the jury to decide, Illinois Central Railroad Company v. Aucoin, 5 Cir., 195 F.2d 983; Henwood v. Wallace, 5 Cir., 159 F.2d 263; Pittman v. Gifford-Hall & Co., La.App., 188 So. 470; and if, on this hypothesis prudence did not compel him to know it was an approaching train, the theoretical opportunity and capacity to stop within a few feet did not shift responsibility back to him under concepts of the Last Clear Chance, cf. Bagala v. Kimble, 225 La. 943, 74 So. 2d 172; Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4; Jackson v. Cook, 189 La. 860, 181 So. 195; Rottman v. Beverly, 183 La. 947, 165 So. 153.

█ Applying Louisiana jurisprudence, we hold motorists to strict standards of care as they approach railroad crossings which they know, or ought clearly to know, are there, e.g., see the cases cited note 4, supra. But reasonable minds might well say of the facts here, as did the jury, that the underlying cause of this event was ignorance of the crossing flowing from the Railroad's negligence. To judge the driver's conduct as though the crossing were adequately marked and its presence readily known would be to insulate the Railroad entirely from its decisive lack of due care in disregard of the unique facts of this setting.

█ The judgment entered on the jury verdict has ample support, and we cannot disregard it, Marsh v. Illinois Central R. Co., 5 Cir., 175 F.2d 498; Whiteman v. Pitrie, 5 Cir., 220 F.2d 914, nor is there any showing that the trial Court abused its discretion in overruling the motion for new trial asserting inadequate evidence on the question of speed of the train, Commercial Credit Corp. v. Pepper, 5 Cir., 187 F.2d 71; Whiteman v. Pitrie, supra; Marsh v. Illinois Central R. Co., supra; Miller v. Tennessee Gas Transmission Co., 5 Cir., 220 F.2d 434; Indamer Corp. v. Crandon, 5 Cir., 217 F.2d 391; Howard v. Louisiana & A. R. Co., 5 Cir., 49 F.2d 571, and the judgment is therefore

Affirmed.

CAMERON, Circuit Judge, concurs in the result.