**TEXAS & PACIFIC RAILWAY COM-
PANY, Appellant,**

v.

**Mrs. Gladys Mayeaux LABORDE et al.,
Appellees.**

**No. 17174.**

United States Court of Appeals
Fifth Circuit.

June 30, 1958.

Rehearing Denied Aug. 11, 1958.

Frank H. Peterman, Alexandria, La., for appellant.

C. F. Gravel, Jr., Alexandria, La., John A. Boatner, Bunkie, La., Gravel, Humphries, Sheffield & Mansour, Alexandria, La., for Gladys Mayeaux Laborde and others, plaintiffs-appellees.

Before HUTCHESON, Chief Judge, and JONES and WISDOM, Circuit Judges.

HUTCHESON, Chief Judge.

The suit was for damages resulting from a collision occurring at a railroad crossing of a dirt and gravel road, known as the O'Neal crossing, between plaintiff's automobile and a freight train belonging to, and under the control of, defendant.

The claims of negligence were: maintaining the right-of-way at and around the crossing in such manner that the view of the track was obstructed and persons using the gravel road could not see up and down the tracks;[1] the failure to operate the train at a reasonable speed; the failure to sound timely warning signals; and the failure to slow the train when the danger of a collision appeared.

The defenses were: a denial of the claims of negligence; and allegations, that the collision was not proximately caused by any fault on its part but by the negligence of plaintiff, and that if defendant was negligent in any particular, plaintiff was guilty of contributory negligence barring her recovery.

At the conclusion of the evidence,[2] which was not substantially in dispute,

1. In regard to this ground of negligence, these are the allegations of pars. 7 and 12 of the complaint:

"7. Mrs. Laborde at all times exercised due care and made every effort to ascertain whether it was safe to proceed onto and across T & P's tracks; *her line of vision up and down the track was impaired, however, by the presence, on either side of the dirt road, of a thick profusion of high grass and weeds and by fence posts, telephone poles, wires, and high barrier-type cattle guard fences on either side of the intersection, making it impossible for her to see for any appreciable distance to the right or left.*" (Emphasis supplied.)

"12. *Being unable to perceive the approach of the train from the south, hearing no audible warning whistle or signal, seeing no visible warning or signal, and assuming that it was safe to do so, Mrs. Laborde drove her automobile onto T & P's tracks in an effort to cross same.*" (Emphasis supplied.)

2. The residence occupied by Mrs. Laborde and her husband at the time of, and for some months prior to, the accident was west of U.S. Highway No. 71 and adjacent thereto. The main line of the Texas and Pacific Railway Company runs approximately north and south, parallel to and east of said Highway for some ten miles south of the Laborde property. The railroad track is about 85 feet from the highway. The surrounding area is open country.

On the morning of Aug. 11, 1955, at about 9:30 A.M., Mrs. Laborde, who was familiar with the crossing, having crossed it three or four times previously, got in the family car to go to the O'Neal home located on the east side of the railroad track for the purpose of using the telephone, according to her testimony. In order to reach her destination, she had to enter Highway No. 71, turn to the left and travel north 224 feet to its intersection with a gravel road, then turn right on this road and cross the main line of defendant's railroad tracks. Exhibit D-9 shows accurately the surroundings at the crossing. U.S. Highway No. 71 is shaded in blue, the roadbed of the Railway Company is shaded in red, the road leading out of the Laborde premises and the gravel road leading from the highway to the O'Neal residence are shown in yellow on said Exhibit.

The weather was clear. The railroad track was on an elevation some four feet above the surface of the ground.

defendant moved for an instructed verdict on the grounds set out below,[3] and the court, denying the motion but without prejudice to its reconsideration after the verdict, submitted the case to the jury on a charge, to which no objection was made. There was a verdict for plaintiff and a motion to set aside the verdict of the jury and enter judgment for defendant, and, in the alternative, for a new trial, and the court, giving his reasons for so doing in an opinion filed by him, denied both motions, and entered judgment on the verdict for the plaintiff.

Appealing from the judgment, defendant is here assigning, as its chief grounds, that (1) no actionable negligence on the part of the defendant was shown, and (2) if there was, plaintiff was contributorily negligent. A subordinate ground assigned is that the court made various rulings which were erroneous and prejudicial to defendant.

Pointing out that the only ground of negligence adverted to by the trial court in his opinion was the failure of the defendant "to maintain its right-of-way adjacent to the crossing so as to allow a motorist to see up and down the track", and arguing that, under the undisputed evidence, including that of the plaintiff herself, the fact that weeds and grass obstructed the view was not a proximate cause of plaintiff's injuries, appellant in-

At the time Mrs. Laborde entered Highway No. 71 a long freight train of the Texas and Pacific Railway Company was approaching the crossing. There were 154 cars in the train which was more than one mile long.

Mrs. Laborde turned off the Highway onto the gravel or O'Neal road without stopping at the intersection. She continued toward the crossing without stopping and reached it at the same time as the locomotive.

According to her testimony: She drove her 1949 model Chevrolet automobile out of the driveway of her home, turned left (or toward the north) and drove along the highway for approximately 224 feet to a dirt and gravel road known as the O'Neal crossing road. She drove this distance at an estimated average speed of 15 miles per hour. When she got to the O'Neal road, she turned right and proceeded along the road in an easterly direction toward the railroad tracks at a slower rate of speed, approximately 12 miles per hour. She knew the crossing was there. She had driven over it maybe three times previously. When she reached a point where a slightly steeper part of the incline in the road starts, she came to almost a complete stop and shifted into second gear. The bottom of the steeper incline was measured by appellees as approximately 30 feet from the tracks. The railroad civil engineer measured the bottom of the incline as being 31 or 32 feet from the tracks. The railroad's right-of-way line was 26 feet from the tracks. While at the bottom of the incline she looked up the track in both directions. She neither saw nor heard the approach of a train. She then proceeded up the incline toward the tracks in low gear at "about ten miles" per hour. When she got a few feet from the tracks, she heard a train whistle for the first time. She took her foot off the accelerator and tried to stop but was unable to do so before the front end of her automobile was in the tracks. The locomotive struck the right front of her automobile.

3. "(1) The evidence shows that defendant was not guilty of any fault or carelessness which was a proximate cause of the accident.

"(2) The evidence shows that defendant did not violate any legal duty or obligation it owed plaintiff at the time of the accident.

"(3) The evidence shows that the proximate cause of the accident was the fault and negligence of the plaintiff herself.

"(4) The evidence shows that it was physically impossible for defendant to avoid the collision after plaintiff put herself in a position of peril.

"(5) Even if there was any negligence on the part of the defendant which was a proximate cause of the accident, nevertheless the evidence shows that the plaintiff was guilty of contributory negligence in failing to keep a proper lookout; in failing to see and hear an approaching train; in failing to stop before going on the crossing at a time and place where she could and should have seen the train; in driving her car into the path of an approaching train which should have been clearly visible to her; in failing to stop, look and listen at a time and place where said precautions would have been effective; and in failing to use the care and precaution for her own safety required by law."

sists that the judgment must be reversed and here rendered, both for that reason and because of the contributory negligence of the plaintiff.

■ In demonstration of the truth of these contentions, appellant then puts forward in a brief, distinguished as well by its range as by its specificity, a series of propositions with in each instance a reference to, and in most a quotation from, a decision or decisions of the Louisiana Courts, with now and then a decision of a federal court, deemed precisely in point and authoritative or closely in point and persuasive. In doing this, however, it recognizes that almost no case is in its facts a precise replica of another and that each court in each case must, under the rules of right reason which govern the determination, determine and decide whether under the particular facts of that case the issue of negligence or contributory negligence in that case presents a question of law for the court or of fact for the jury.

■ Appellees concede, as they must, that, as decided by this court in Brinson v. Illinois C. Ry. Co., 5 Cir., 241 F.2d 494, while negligence and contributory negligence are ordinarily issues for the jury, where there is no substantial conflict in the evidence and when, from undisputed and indisputable facts, reasonable men in the exercise of right reason and fair judgment could draw only one conclusion, the court may properly withdraw them from the jury. Standing firmly, however, on the opinion and decision of the district judge and on the cases cited and relied on by them, including particularly Henwood v. Wallace, 5 Cir., 159 F.2d 263, Judge Sibley dissenting, and Texas & Pac. Ry. Co. v. Watkins, 5 Cir., 243 F.2d 171, Judge Tuttle dissenting, appellees insist that under the facts of this case the issues were not for the court but for the jury.

For the reasons and upon the authorities hereafter set down, we agree with appellant, we disagree with appellees and the district judge. Because, however, of the very profusion and, we must add,

confusion in the decisions dealing with this troublesome matter, fact or law, before proceeding to the precise demonstration of our view, that in this case the questions presented are of law and not of fact, we think some preliminary generalizing will not be amiss.

The civilian, with his code and his trial by judge, looks on the terms matter of fact and matter of law as little better than senseless jargon. We, brought up in its spirit and nurture, know that matter of fact and matter of law are the very stuff of which the common law is made, and that negligence suits have furnished natural battle grounds for knock down and drag out fights over fact and law.

Whether the maxim, "ad quaestionem juris respondent judices, ad quaestionem facti respondent juratores", a favorite with Coke, was borrowed by him from Bracton, or was his own confection, is not material for our purpose. It is sufficient to say of it that, never true if taken absolutely, it was never intended to be, it was never so taken, and that in outline and in effect it states the great general rule that the regular common law mode of trying questions of fact is by jury. Said Coke:

> "The most usual trial of matters of fact is by twelve such men; for ad quaestionem facti non respondent judices; and matters in law the judges ought to decide and discuss; for ad quaestionem juris non respondent juratores."

In saying this, he made it plain that definition must go out of the window and that in determining what is matter of fact and what is matter of law, we must look alone to what judges have done, are doing, probably will do. In short, matters which the judges are supposed to settle and determine are matters of law, all others are matters of fact for the jury.

This discrimination between matter of fact and law is not a mere product, it is of the essence, of the jury system. Its progress and development are the result of efforts on the one hand to bring cer-

tainty into the law by declaring and giving effects to standards rather than leaving every case to be variantly decided by varying juries, and, on the other, to decry these efforts and bring them to naught, as making for a "delusive exactness".[4] Our wisest, indeed our only satisfactory course, therefore, is to take matter of law and matter of fact as the decisions have worked, and are working, them out, troubling ourselves not at all with the baffling attempt to determine and define their philosophical content and meaning, viewed abstractly and as disassociated from the decisions.

Chamberlayne, in his Modern Law of Evidence, Vol. 1, cc. 2 and 3, agreeing with the view here taken, that it is sufficient to say that, as used in the trial of cases, law is the standard or rule which the court must apply to the facts, and fact is every other matter which the judge must not, and the jury therefore must, determine, makes a valuable contribution. He points out that the separation of the judicial tribunal for the trial of cases into its two component parts of judge and jury is the most salient and fundamental feature of English jurisprudence, and that it is this division of function which has made it necessary to segregate matter of law from matter of fact. He makes it clear, as others do, that what is law and what is fact have been, and will continue to be, a matter of growth and change as the prevailing climate of opinion narrows or broadens the field of certainty. Completely rejecting the idea that a jury authorized to return a general verdict may be said to have a right to judge of both law and fact, he points out that it has the power to disregard the law as given in the instructions of the court; it does not have the right to do so and then itself adjudge the law. "This power instead of being called a power to judge of the law should rather be regarded as a power to set aside the law in a given instance, and it is believed that the popular affection for the system of trial by jury lies largely in the fact that this system involves a popular prohibition upon the execution of the law in hard cases." Thompson, Trials (1889) 2133.

This struggle between those who wish the law to be certain and fixed and each case to be decided as matter of law by the judge, and those who wish it human and flexible and each case to be decided as matter of fact by the jury, between the certainers and the uncertainers, between precedent and free decision, between law and fact, has put society and the Judge as Administrator[5] hard to it to develop fair and workable trial rules which, while giving effect to controlling law, leave fact questions to the jury. The chief of these rules are (1) rules of evidence; (2) rules for the construction of documents, statutes and other writings; (3) rules for the instruction and the guidance of the jury on the law of the case; and (4) the direction of a verdict under the rule of right reason on an issue or on the whole case where the evidence is without probative force.[6]

Proceeding now to the demonstration that, as matter of law, no case of actionable negligence was made out, we begin with the proposition that in Louisiana there is no presumption in a crossing collision that the defendant was negligent, and it was incumbent on the plaintiff to prove that it was,[7] to follow it with a showing that plaintiff's charge,

4. Quanah A. & P. Ry. v. Gray, 5 Cir., 1933, 63 F.2d 410, contains an interesting discussion of the state of mind which, while it depreciates delusive exactness in constitutional questions, seeks to attain it at common law by gradually eliminating jury verdicts and setting up in lieu thereof standard fact patterns and thus determining cases as matter of law by the conformity of their facts with these patterns. Cf. Baltimore & O. R. v. Goodman, 1927, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167, but see Pokora v. Wabash, 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149.

5. Maryland Cas. Co. v. Reid, 5 Cir., 76 F. 2d 30.

6. Chamberlayne, The Modern Law of Evidence, Secs. 120a, 122, 145, 148, 149.

7. "Negligence is the breach of a legal duty or obligation; it, or the facts upon which

that the company was negligent in operating its train at and near the crossing at too great a speed, is without foundation. The evidence establishes that the train's speed was not in excess of fifty miles. There is no statute or regulation in Louisiana limiting the speed of trains at the point of the accident, and the jurisprudence of Louisiana is uniform to the effect that in the open country any speed consistent with the safety of the train is permissible. Sullivan v. Yazoo & Miss. Valley, La.App., 8 So.2d 109; Guidry v. Texas & N. O., La.App., 56 So.2d 611; and Lewis v. Thompson, supra.

■ Another claim made by her, that the engineer did not sound the whistle soon enough, is disproved in law by the rule in Louisiana as authoritatively laid down in Guidry v. Texas & N. O., La. App., 20 So.2d 637, 638: "A railroad train is not required to sound a warning for a private crossing in a rural area or to diminish its speed for such private crossing."; and reaffirmed in Guidry v. T. & N. O., La.App., 56 So.2d 611. It is disproved in fact by the testimony of three members of the train crew and by Mr. O'Neill, that the engineer began to blow the whistle when Mrs. Laborde first turned off the highway to enter the gravel road, and this is not disputed by the positive testimony of any witness.

■ Of her claim that those on the locomotive failed to make any effort to reduce the speed of the train when they saw Mrs. Laborde enter the gravel road driving toward the crossing, it is sufficient to say that the uniform jurisprudence of Louisiana as is that of most other jurisdictions, is that the operators of a train have a right to assume, unless they have evidence to the contrary, that persons approaching a track, before attempting to cross it, will, as it is their duty to do, stop and make sure that it is safe to do so.

In Levy v. New Orleans & N. E. Ry. Co., La.App., 20 So.2d 559, 565, a case almost identical with this one, the court said:

"If * * * Mrs. Levy's [Mrs. Laborde's] car slowly approached the track * * * surely they were not negligent in believing that it would be brought to a stop before reaching the track. That is what happens at almost every crossing, urban or country, every time a train approaches. The crew sees many automobiles driving towards the crossing and they assume, as they are justified in doing, that each car is going to stop."

Cf. Hanks v. Arkansas & La. Ry., La. App., 62 So.2d 139, 146, where it is said:

"The only knowledge of danger came at the last instant when defendant's brakeman observed that the driver was not going to stop. * * * *Members of a train crew are not negligent in assuming that the operator of an automobile approaching the track will bring the vehicle to a stop, and there is no negligence even when they persist in such a reasonable belief until it is no longer in their power to avoid the accident.* Bordenave v. Texas & N. O. Ry. Co., La.App., 46 So.2d 525." (Emphasis supplied.)

■ When as a last resort, plaintiff falls back upon her claim of negligence in permitting grass and weeds to grow upon the right-of-way to such heights that at a point some thirty feet from the tracks, where the plaintiff slowed down to look for an approaching train, she was prevented thereby from seeing it, no better case of negligence is made out, for, as will be pointed out more fully in connection with plaintiff's contributory negligence, no one testified, it is not even claimed, that if plaintiff had come to a stop at or near the tracks, as she

---

it is based, must be pleaded and proved; it is never assumed, presumed, or predicated upon mere inference." Lewis v. Thompson, D.C., 47 F.Supp. 435, 438.

"Courts must scrupulously refrain from accepting speculation and possibility as an adequate basis of recovery." Windham v. W. Horace Williams Co., La.App., 18 So.2d 854. Cf. Thrash v. Continental, La.App., 6 So.2d 75.

did not do, she would not have had a full view of the train and thereby avoided the injury. Her claim, therefore, that defendant, in permitting weeds and grass to grow, was guilty of negligence which proximately caused the injury, falls. For, as we have shown above, if plaintiff, as the train crew had a right to assume she would do, had come to a stop before trying to cross or had even proceeded slowly enough, the collision would not have occurred, and thus it was her negligence in failing to do this, and not the presence of the weeds which proximately caused the injury. Cf. Stewart v. Kroger, 198 Miss. 371, 21 So.2d 912, and Brown v. Louisville, 5 Cir., 234 F.2d 204.

We thus reach the question, whether, upon the undisputed evidence, indeed upon plaintiff's clear admissions, and under the settled law of Louisiana, it must be held that plaintiff's negligence contributed in some degree to the collision, to say that we think it inescapable that it must be, and that it presents in fact and in law an insuperable barrier to plaintiff's recovery.

When plaintiff came out of her home onto the highway the train was not more than 1000 feet from the crossing, otherwise it could not have reached the intersection at the same time she did. Nevertheless, with all the open view which she had, she went on without looking until she came to a point in the road at the bottom of what she called the steep rise to the tracks and thirty feet from the crossing. There, without stopping the car and, though, as she said, she couldn't see anything on account of the grass she took a hasty glance to the right and left and not seeing or hearing any train and proceeding without stopping or looking any further, she drove up the incline in second gear at a speed from ten to twelve miles an hour and onto the tracks where she was struck by the oncoming train. The courts in general [8] and of Louisiana

in particular have dealt frequently, specifically, and pointedly with situations of this kind. Illinois Central R. Co. v. Leichner, 5 Cir., 19 F.2d 118; Teston v. Thompson, D.C., 77 F.Supp. 823; Barnhill v. Texas & P. Ry. Co., 109 La. 43, 33 So. 63; Hutchinson v. Texas & P., La.App., 33 So.2d 139; Stelly v. Texas & N. O., La.App., 49 So.2d 640. In the Hutchinson case, where it was claimed that the view was obscured by crossing signs, telegraph poles and weeds and bushes, the court stated [33 So.2d 143]:

"Even if the weeds had obstructed plaintiff's view, as he claims, his duty to stop, look, and listen was the more incumbent upon him."

while in the Stelly case [49 So.2d 646], the court said, with reference to a crossing where it was claimed that the weeds had grown to such height as to obscure the view of an approaching train:

"Residents of the vicinity of the crossing testified that they paid no attention to the weeds alongside the track, and did not know how tall they were. We feel that the weeds were of such a height and nature as to be of little consequence. Had they so obstructed the view, as is alleged by plaintiff, then Stelly should have exercised more care in traversing the crossing. Quoting from Hutchinson v. Texas & N. O. (supra):

" 'Even if the weeds had obstructed plaintiff's view, as he claims, his duty to stop, look, and listen was the more incumbent upon him.' Perrin v. New Orleans Terminal Co., 140 La. 818, 74 So. 160."

This court, as it is required to do in Louisiana cases, has with substantial uniformity followed their lead. Cf. Shell Oil Co. v. Slade, 5 Cir., 133 F.2d 518 and Brinson v. Illinois Central R. Co., 5 Cir., 241 F.2d 494, 496.

In Brinson's case, which involved a claim that a crossing was obstructed and

---

8. 5-A Am.Jur., "Automobiles and Highway Traffic, Sec. 331: "Where the vision of the driver of an automobile is obstructed for any cause, the law requires that he exercise care commensurate with the situation and requires him to proceed with more caution than where he has unobstructed vision."

which is in principle indistinguishable from this one, the court, in dealing with an appeal from a judgment on an instructed verdict for the defendant, said:

"Applying these principles to the undisputed facts as disclosed by this record, we think it plain that the driver, in the exercise of ordinary care for his own safety, could have easily stopped the car, which was moving at a relatively slow speed, after passing the north edge of the farm machinery and before reaching the main-line track. The greater the difficulty of seeing and hearing the train as he approaches the crossing, the greater caution the law imposes upon the motorist. Barnhill v. Texas & P. R. Co., 109 La. 43, 33 So. 63. Cf. Guidry v. Texas & N. O. R. Co., La.App., 56 So.2d 611; Stelly v. Texas & N. O. Co., La.App., 49 So. 2d 640. And where, as here, the driver's view of the tracks was obstructed he was required under the Louisiana law to proceed only with the greatest caution."

If, contrary to common experience and to the evidence of the plaintiff's witness, O'Neal, the jury could believe that the grass was so high at the point where she looked as to obstruct plaintiff's view of a train which, running on rails some four feet above the level of the ground, was itself some 15 feet above the rails, then, under Louisiana law, plaintiff was required to take the further precaution of looking for a train where the looking would be effective, that is, *at a place and under circumstances where she could see it, and not to proceed across the track without doing so.*[9]

 It is greatly significant that the Louisiana courts have uniformly held that where, as here, a driver knows of the presence of a railway track, lives within a short distance of it, and has several times driven over it, it is not sufficient for him to say that he did not see a train coming when he tried to cross without stopping or at least looking at a place where he could see it. In short, if the evidence is such as to compel the view that he could reasonably have seen it, he is held to have seen it. Sullivan v. Locke, La.App., 73 So.2d 616; Matthews v. New Orleans Terminal Co., La. App., 45 So.2d 547; Wyche v. Brian, La.App., 28 So.2d 143; Vigilant Ins. Co. v. Lumbermen's Mutual Casualty Co., La.App., 85 So.2d 87.

As to the cases on which appellee relies, we think a word or two will suffice to show that none of them are authoritative, indeed persuasive, in her favor. Lipscomb v. New Star, La.App., 5 So.2d 41, a guest case, did not involve questions of simple negligence at all. What was said there had to do entirely with whether, as matter of law, wanton or willful disregard of the rights of others had been proven. Henwood v. Wallace, 5 Cir., 159 F.2d 263, one judge dissenting, was a case in which the proof showed that the railroad train was running at a reckless rate of speed and failed to give any warning. The majority there held merely that the rule in Louisiana on the subject of contributory negligence was not made more stringent by the Louisiana Highway Regulatory Laws because they have not been so construed by the Appellate Courts of Louisiana and the Act of 1924 [LSA–R.S. 45:563] expressly enacted a contrary rule.

Illinois Central R. Co. v. Aucoin, 5 Cir., 195 F.2d 983, 984 laid down no peculiar or new rule of law. The court merely held that under the facts this was not a case for the direction of a verdict.

Kansas City Southern R. Co. v. Wiggins, 5 Cir., 234 F.2d 128, 132, written by the same panel that wrote Brown v. Louisville & N. Ry. Co., appearing in the same volume at page 204, contains nothing giving aid or comfort to appellee's claim. Stating, "Applying Louisiana jurisprudence, we hold motorists

9. Northern Pac. Ry. Co. v. Bacon, 9 Cir., 91 F.2d 173; Lewis v. Thompson, D.C., 47 F.Supp. 435; Teston v. Thompson, supra; Young v. Louisiana Western Ry. Co., 153 La. 129, 95 So. 511; Dardene v. Texas & P., 13 La.App. 262, 127 So. 458.

to strict standards of care as they approach railroad crossings which they know, or ought clearly to know, are there", and setting out all the correct principles which, under Louisiana law, govern cases of this kind, the opinion convincingly demonstrates that under its facts, one of the most important of which was that there was negligence on the part of the railroad company and that the plaintiff did not know that he was approaching a crossing, the court held that the case was not one for an instruction but one for the jury. It is true that in Texas & P. R. Co. v. Watkins, 5 Cir., 243 F.2d 171, Judge Tuttle dissenting, at first blush the majority opinion seems in its application to the facts to be out of line with the principles governing the application in Louisiana of the rule of contributory negligence in cases of this general kind. Nothing in it, however considered, can be taken as undertaking to state a general rule contrary to that stated and applied herein and in the uniform decisions of the Louisiana courts and of this court, including particularly Brinson v. Illinois Central, 5 Cir., 241 F.2d 494, which we think conclusive of this case, and which the court in the Watkins case could not, and did not attempt to, overrule.

Finally, appellee's reliance on Ruhl v. Missouri Pac. R. Co., Mo., 304 S.W.2d 16, 18, will not at all do, for as there appears, the collision in that case was one in which both driver and guest were killed, and there was no evidence as to what was done by the driver before crossing the track. The court there merely held that since this was so, "There is no evidence as to what they did and whatever the rule may be elsewhere (annotation 84 A.L.R. 1221), it is presumed in Kansas, in the absence of evidence, that the deceased driver and occupant looked and listened for an approaching train before venturing upon the crossing."

As an examination of the decisions of Louisiana, as well as of the note in 84 A.L.R. will show, this rule does not apply in Louisiana, and, if it did, the plaintiff in this case having testified fully

as to what she did, the rule would not apply even in those jurisdictions where it would otherwise prevail.

The judgment is reversed and the cause is remanded with instructions to direct a verdict for the defendant.